ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

NOV 03 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | | |
|---|---|---|
| AT&T MOBILITY LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action No. _____ |
| v. | : | |
| | : | |
| CELLCO PARTNERSHIP d/b/a | : | **1:09-CV-3057** |
| VERIZON WIRELESS, | : | |
| | : | |
| Defendant. | : | |



## COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DAMAGES

This Complaint seeks a temporary restraining order, preliminary injunction and a permanent injunction to stop Cellco Partnership d/b/a Verizon Wireless ("Verizon") from disseminating misleading coverage maps in television and print advertisements about AT&T Mobility LLC's ("AT&T") voice and data network. AT&T has suffered and continues to suffer irreparable harm as a result of Verizon's misleading advertising. AT&T requests an immediate hearing.

## BRIEF SUMMARY OF ACTION

1.   This action for injunctive relief and damages arises from misleading comparative advertising by Verizon in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a), and related Georgia state laws.

2.    The wireless business is highly competitive and AT&T and Verizon, the two largest wireless carriers, vigorously compete to take existing and potential customers from the other.

3.    Verizon and AT&T have national "3G" (short for "third generation" of network engineering) networks. One of the critical differences between a "3G" network and earlier versions of wireless data networks is the speed by which a customer can perform certain data functions. A "3G" network provides increased bandwidth for uploading and downloading data and video for wireless devices.

4.    In October, 2009, Verizon began a new advertising campaign promoting its "3G" network coverage area. This campaign consists of radio, print, and television advertisements.[1]

5.    In one of the television advertisements and at least one radio advertisement, Verizon falsely claimed that AT&T customers were "out of touch" where AT&T "3G" coverage is not available.

6.    Moreover, in both television advertisements and in print advertisements, Verizon displayed a "3G" coverage map attributed to AT&T with

---

[1]    Immediately prior to filing its Complaint, AT&T discovered that Verizon has also now incorporated this campaign into its website: http://phones.verizonwireless.com /3g/.

large swaths of white or blank areas (or no coverage) to bolster its misleading message that customers with AT&T service are "out of touch" in large parts of the United States.

7.    On October 7, 2009 AT&T contacted Verizon and requested that the advertisements be withdrawn from circulation or modified to be accurate.

8.    In response to AT&T's request that Verizon stop running the advertisements, Verizon removed the words "out of touch" from them and superimposed the phrase "Voice & data services available outside 3G coverage areas" in small font at the end of the television advertisements.

9.    Verizon's purported solution has done nothing to change the misleading message in its advertisements.   By continuing to include a "3G" coverage map in its advertisements, Verizon is still conveying the message that AT&T has no coverage in the white or blank space included in the maps, and thus AT&T customers cannot use their wireless devices in large portions of the United States.

10.    As set forth in more detail below, Verizon has disseminated misleading advertisements showing AT&T's "3G" coverage maps with large swaths of white or blank spaces.   These "3G" coverage maps mislead consumers

into believing that AT&T customers who are not in "3G" coverage areas have no coverage at all.

11.    The fact that consumers are being misled by the blank and white space on the maps is not surprising as Verizon, in its own coverage maps, uses white space to inform consumers that no coverage of any kind exists.

12.    Separate from its "3G" network, AT&T also covers the United States with a ubiquitous wireless network called "2.5G" GSM/EDGE.[2]  The coverage area of AT&T's "2.5G" GSM/EDGE network exceeds that of AT&T's "3G" network.

13.    Accordingly, when customers are not on AT&T's "3G" network or not in a "3G" area, they are typically communicating on AT&T's "2.5G" GSM/EDGE network.  The "2.5G" GSM/EDGE network does not offer wireless data speeds that are as fast as a "3G" network, but it provides consumers the full ability to browse the Internet, including social networking sites, stream audio/video, or send electronic mails and text messages.  The "2.5G" GSM/EDGE

---

[2]    In addition to the "2.5G" GSM/EDGE network, AT&T also operates a "2.0G" GSM/GPRS network.  The "2.0G" GSM/GPRS network is not as fast as the "2.5G" GSM/EDGE network, but allows AT&T customers to make and receive telephone calls and perform basic data activities (electronic mails and text messages).

network (with roaming partners) covers 1.75 million square miles of the country and is available to approximately 296 million people where they live and work.

14.    Prior to the advent of "3G" networks, the pre-"3G" networks supported the hugely popular iPhone for more than a year, and still support millions of iPhones and other wireless devices currently in use. Emphatically, therefore, AT&T customers are in no manner without coverage when they are outside of AT&T's depicted coverage area.

15.    In these advertisements, Verizon uses AT&T's "3G" coverage map, which contains a footprint that is smaller than AT&T's non-"3G" networks, to mislead consumers into believing that when they are in the areas depicted by large swaths of white or blank space in AT&T's "3G" coverage maps, they have no coverage whatsoever.

16.    These maps and the advertisements are misleading, and the Court should immediately temporarily restrain, and preliminarily and permanently enjoin Verizon from displaying in its advertisements a map of AT&T's "3G" coverage in which AT&T's non-"3G" coverage areas are depicted by white or blank space, or otherwise claiming that AT&T customers cannot communicate or use their wireless devices in large areas of the country. By so doing, the Court will stop

Verizon from misleading consumers into believing that when AT&T customers are not in a "3G" coverage area, they are without wireless coverage all together.

17.     The Court should not permit Verizon's misleading advertising to continue damaging AT&T, deceiving and confusing AT&T customers and potential customers, and damaging competition.

### THE PARTIES

18.     AT&T is a provider of wireless voice and data communication services in the United States, with more than 81 million customers.

19.     AT&T is a Delaware limited liability company with its principal place of place of business in Atlanta, Georgia.

20.     Verizon is a Delaware general partnership that purposefully avails itself of the laws of every jurisdiction in the United States, including the State of Georgia, with its principal place of business at One Verizon Way, Basking Ridge, New Jersey, 07920.

21.     The Delaware Secretary of State identifies Verizon's registered agent as the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware, 19801.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1367.

23.     The Court has jurisdiction over Verizon because it transacts business in Georgia and is otherwise subject to jurisdiction in this State.   In addition, Verizon has committed tortious acts within the state and/or committed tortious injury in this state caused by an act or omission outside the state and engaged in other persistent courses of conduct in this state.

24.     Venue in this District is proper pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO ALL COUNTS
### Fierce Competition Between Verizon and AT&T

25.     For the last several years, there has been fierce competition in the market for wireless communication services and products.   The number of new wireless customers is decreasing as the market becomes more mature.

26.     Wireless companies are actively attempting to maintain their existing customers and to entice new customers based upon better quality, price, or some other value deemed by consumers to be material to the decision to purchase wireless services.

27.    AT&T and Verizon are the two largest wireless providers in the United States.

28.    As competitors, AT&T and Verizon seek to gain advantage over each other and earn consumer loyalty by, among other things, upgrading network systems and adding service features to enable them to make advertising claims about their wireless networks.

### AT&T's and Verizon's "3G" Networks

29.    One of the critical differences between a "3G" network and other wireless networks is the speed at which consumers can engage in data-centric activities wirelessly.

30.    Importantly, when a customer is not on AT&T's "3G" network that does not mean that the customer is without wireless coverage.

31.    In addition to a "3G" network, AT&T covers the United States with another ubiquitous wireless network called "2.5G" GSM/EDGE. The coverage area of AT&T's "2.5G" GSM/EDGE network exceeds that of AT&T's "3G" network. The "2.5G" GSM/EDGE network (with roaming partners) covers 1.75 million square miles of the country and is available to approximately 296 million people where they live and work.

32.    When customers are not on AT&T's "3G" network or not in a "3G" area, they are typically communicating on AT&T's "2.5G" GSM/EDGE network. The "2.5G" GSM/EDGE network does not offer wireless data speeds that are as fast as a "3G" network, but it provides consumers the full ability to make calls, browse the Internet, including social networking sites, stream audio/video, or send electronic mails and text messages.

33.    Prior to the advent of "3G" networks, the pre-"3G" networks supported the hugely popular iPhone for more than a year, and still support millions of iPhones and other wireless devices currently in use.

### Brief Summary Of The Misleading Advertisements

34.    During the week of October 5, 2009, Verizon ran two different television advertisements in response to Apple's successful iPhone campaign stating that "there's an app ("application") for that" -- which touts the multitude of applications that a customer can utilize on his or her Apple iPhone.    The advertisements falsely claimed that AT&T customers who were not in a "3G" coverage area were "out of touch."

35.    In response to AT&T's request that Verizon stop running the false advertisements, Verizon removed the words "out of touch" from them and

superimposed the phrase "Voice & data services available outside 3G coverage areas" in small font at the end of the advertisement.

36.     Verizon's purported solution has done nothing to change the misleading message in its advertisements.

37.     In these misleading advertisements described below, Verizon displays maps of the United States that purport to show each carrier's "3G" coverage.

38.     The maps use color to depict the areas of the country in which each carrier has "3G" coverage and blank or white space in the areas of the country where coverage is allegedly not available.

39.     The advertisements make repeated references about what Verizon's "3G" coverage can do for a customer, and then reference a "3G" coverage map showing that Verizon has widespread "3G" coverage across the United States. The announcer of the advertisement repeats the phrase "there's a map for that."

40.     Each of the advertisements then concludes by disparaging AT&T's network and services, using the same tag line, "there's a map for that," showing an AT&T "3G" coverage map with large amounts of white or blank space throughout the United States.

41. The "Bench" television advertisement begins by stating "if you want to know why your "3G" coverage works so great on Verizon Wireless, there's a map for that." The Verizon "3G" coverage map then appears on the screen.

42. The advertisement then discusses that with Verizon's "3G" coverage, you can make "plans on the go." The Verizon "3G" coverage map then pops up on the screen again.

43. After these two statements, the announcer's tone of voice changes and he says: "If you want to know why your friend's "3G" coverage is spotty, there's a map for that too."

44. At this point in the commercial, an AT&T "3G" coverage map appears showing large swaths of white or blank space over the United States. Verizon bolsters this message by also depicting a frustrated or sad AT&T customer sitting alone on bench because she is not able to use her wireless device to meet up with her friends.

45. By depicting AT&T's non-"3G" coverage as white or blank space in the coverage map attributed to AT&T next to an AT&T customer unable to meet her friends or do anything with her wireless device, this advertisement misleads consumers into believing that AT&T's customers have no coverage whatsoever

when they are outside of AT&T's depicted coverage area and thus cannot use their wireless devices in many parts of the United States.

46.  The "College" television advertisement starts the same way as the "Bench" advertisement, promoting why customers can do various things on Verizon's network at "3G" speed and referencing Verizon's "3G" coverage map.

47.  The announcer's voice then changes, and he says "and if you want to know why some people have spotty "3G" coverage, there's a map for that."

48.  The "3G" coverage map of AT&T then appears on the screen showing large swaths of white or blank spaces. The character in the commercial tries to use his wireless device but shakes his head expressing disappointment.

49.  As with the misleading "Bench" advertisement, by depicting AT&T's non-"3G" coverage as white or blank space in the map used in Verizon's "College" advertisement, and depicting an AT&T customer as being frustrated with his wireless device, this advertisement misleads consumers into believing that AT&T's customers have no coverage whatsoever and thus cannot use their wireless devices when they are outside of AT&T's depicted coverage area.

50.  The same holds true for a print advertisement Verizon is running: It displays its "3G" coverage map next to one attributed to AT&T. The map attributed to AT&T shows large swaths of white or blank space, as if these are

- 12 -

areas in which AT&T has no coverage whatsoever. By depicting AT&T's non-"3G" coverage as white or blank space in the map used in Verizon's print advertisement, consumers are being misled into believing that AT&T's customers have no coverage whatsoever and thus cannot use their wireless devices when they are outside of AT&T's depicted coverage area.

51.   AT&T's customers using the "2.5G" GSM/EDGE network can do all of the tasks identified in the television commercials. AT&T's customers are not without coverage when they are outside of AT&T's depicted coverage area.

## Verizon's Advertisements Have Caused And Are Continuing to Cause Irreparable Harm To AT&T

52.   Verizon's use of AT&T's "3G" coverage map in its advertisements to convey that AT&T customers are without coverage when they are not in a "3G" coverage area has caused and will continue to cause irreparable harm to AT&T.

53.   The fourth quarter of any year is the most vigorous and important marketing season for the wireless industry, and damage to competition during the fourth quarter is particularly harmful to the public's interest in fair competition.

54.   Verizon's misleading claims have caused injury to AT&T and unless enjoined will injure AT&T's goodwill and erode its market share. These misleading advertisements also damage honest competition.

55.    The Court should issue a temporary restraining order, preliminary injunction, and permanent injunction to stop Verizon's misleading use of AT&T's "3G" coverage maps.

## COUNT I - FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125 (a)

56.    AT&T repeats, re-alleges, and incorporates the allegations set forth in paragraphs 1-55 as if fully set forth herein.

57.    Verizon is making misleading statements in national television and print advertisements.

58.    Verizon's misleading statements have actually deceived or have the capacity to deceive a substantial portion of the intended audience.

59.    Verizon's misleading statements are material in that they are likely to influence purchasing decisions of wireless customers.

60.    Verizon's misleading statements have caused injury to AT&T and unless enjoined will irreparably injure AT&T's goodwill and erode its market share, causing declining sales.

61.    Verizon's representations in the national television and print advertisements have traveled in interstate commerce.

62.    Verizon's conduct constitutes false advertising in violation of the Lanham Act, § 43(a), 15 U.S.C. § 1125(a).

- 14 -

63.    Based on Verizon's misleading advertisements, AT&T is entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

64.    The balance of the harms supports issuance of a temporary restraining order, preliminary injunction, and permanent injunction.

65.    Issuance of a temporary restraining order, preliminary injunction, and permanent injunction would promote the public interest.

66.    AT&T has suffered and will continue to suffer irreparable harm as a result of Verizon's misleading advertising.

67.    As described in 15 U.S.C. § 1117, AT&T is entitled to treble damages as a result of Verizon's violation of 15 U.S.C. § 1125(a).

68.    This is an exceptional case as described in 15 U.S.C. § 1117 that entitles AT&T to reasonable attorneys' fees.

## COUNT II - FALSE ADVERTISING ACT IN VIOLATION OF GEORGIA FALSE ADVERTISING ACT

69.    AT&T repeats, re-alleges, and incorporates the allegations set forth in paragraphs 1-68 above as if fully set forth herein.

70.    Verizon's misleading advertising in national television commercials and print advertisements violates the Georgia False Advertising Act, O.C.G.A. § 10-1-421, and AT&T is aggrieved thereby, pursuant to O.C.G.A. § 10-1-423.

71.    Based on Verizon's misleading advertising, AT&T is entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

72.    The balance of the harms supports issuance of a temporary restraining order, preliminary injunction, and permanent injunction.

73.    Issuance of a temporary restraining order, preliminary injunction and permanent injunction would promote the public interest.

74.    AT&T has suffered and will continue to suffer irreparable harm as a result of Verizon's misleading advertisements.

## COUNT III - GEORGIA DECEPTIVE TRADE PRACTICES

75.    AT&T repeats, re-alleges, and incorporates the allegations set forth in paragraphs 1-74 above as if fully set forth herein.

76.    Verizon has disparaged AT&T's wireless service by including misleading coverage maps in their national television commercials and print advertisements.  Verizon is causing damage to AT&T.

77.    Verizon has violated and is violating of the provisions of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372, et seq.

78.    As a result of Verizon's deceptive trade practices, AT&T is entitled to a temporary restraining order,  preliminary injunction, and permanent injunction.

79.     The balance of the harms supports issuance of a temporary restraining order, preliminary injunction, and permanent injunction.

80.     Issuance of a temporary restraining order, preliminary injunction, and permanent injunction would promote the public interest.

81.     AT&T has suffered and will continue to suffer irreparable harm as a result of Verizon's deceptive trade practices.

WHEREFORE, AT&T seeks relief as follows:

(1)     A temporary restraining order, preliminary injunction, and permanent injunction enjoining Verizon, and its officers, agents, servants, employees, attorneys, successors and assigns, and all others in active concert or participation, from displaying in the "Bench" advertisement, or any other advertisement, a map of AT&T's "3G" coverage in which AT&T's non-"3G" coverage areas are depicted by white or blank space, or otherwise claiming that AT&T customers cannot communicate or use their wireless devices in large areas of the country.

(2)     Compensatory, lost profit, and any other damages available at law for AT&T's injury caused by Verizon's misconduct;

(3)     Prejudgment and post-judgment interest on any monetary award to AT&T;

(4)     Treble damages under 15 U.S.C. § 1117;

(5)    A finding that this is an "exceptional" case under 15 U.S.C. § 1117, and an award of attorneys' fees and costs;

(6)    A trial by jury on all issues so triable; and

(7)    An award of such other and further relief as this Court deems just and proper.

This 3rd day of November, 2009.

_____
David L. Balser
Georgia Bar No. 035835
Nathan L. Garroway
Georgia Bar No. 142194
Tracy Klingler
Georgia Bar No. 105450

McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
(404) 527-4000
(404) 527-4198 (facsimile)

Co-Counsel:

Neal S. Berinhout
Georgia Bar No. 054687
AT&T Mobility LLC
1025 Lenox Park Blvd., Suite C575
Atlanta, GA 30319
404-986-1427

*Attorneys for AT&T Mobility LLC*