# ORIGINAL

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

NOV 03 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

| | |
|---|---|
| AT&T MOBILITY LLC, | |
|     Plaintiff, | |
| vs. | Civil Action File<br>No. _____ |
| CELLCO PARTNERSHIP d/b/a<br>VERIZON WIRELESS | **1-09-CV-305 7** |
|     Defendant. | |



WSD

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER

David L. Balser
Georgia Bar No. 035835
Nathan L. Garroway
Georgia Bar No. 142194
Tracy Klingler
Georgia Bar No. 105450

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
(404) 527-4000
(404) 527-4198 (facsimile)

*Attorneys for Plaintiff*
*AT&T Mobility LLC*

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................... 1

II.    STATEMENT OF FACTS ................................................................ 4

     A.    AT&T's Networks ............................................................... 6

     B.    Verizon's "Bench" Television Ad ...................................... 8

III.    ARGUMENT AND AUTHORITY ................................................. 9

     A.    AT&T IS LIKELY TO SUCCEED ON THE MERITS ................... 10

         1.    Verizon's Misleading Claim Is Actionable Under The Lanham Act ................................................................ 10

         2.    AT&T Is Likely To Succeed On Its Claim That Verizon's Ad Is Misleading Under The Lanham Act .............. 11

             a.    AT&T Is Likely To Satisfy The First Element Of The Lanham Act Test: Verizon's Ad Is Misleading ..... 12

                 i.    Verizon's Misleading Advertisement ................. 12

                 ii.    The Message Communicated In This Advertisement Is Misleading ............................... 13

             b.    AT&T Is Likely To Satisfy The Second Element Of The Lanham Act Test: Verizon's Ad Deceives Consumers .................................................................... 14

             c.    Verizon's Claims Are Material ...................................... 17

             d.    Verizon's Misleading Claims Affect Interstate Commerce .................................................................... 19

             e.    AT&T Has Been And Continues To Be Harmed by Verizon's Misleading Ad ............................................. 19

     B.    AT&T IS SUFFERING IRREPARABLE HARM AND THE BALANCE OF EQUITIES STRONGLY FAVORS INJUNCTIVE RELIEF ......................................................... 20

         1.    AT&T Is Suffering Irreparable Harm As A Result of Verizon's Actions .................................................... 20

         2.    A Temporary Restraining Order Would Cause No Cognizable Harm to Verizon ..................................... 22

# TABLE OF CONTENTS
(continued)

Page

C.  A TEMPORARY RESTRAINING ORDER IS CONSISTENT
WITH THE PUBLIC INTEREST ......................................................24

IV.  CONCLUSION ...............................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. Suntrust Banks, Inc.,*
  549 F. Supp. 2d 1379 (N.D. Ga. 2008)..............................................................10

*American Brands Inc. v. R.J. Reynolds Tobacco Co.,*
  413 F. Supp. 1352 (S.D.N.Y. 1976) ..................................................................14

*Ardito v. City of Providence,*
  263 F. Supp. 2d 358 (D.R.I. 2003) ....................................................................23

*BellSouth Telecomm., Inc. v. Hawk Comm., LLC,*
  No. 04-280, 2004 WL 1085324 (N.D. Ga. Apr. 12, 2004) ....................17, 19, 24

*BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC,*
  425 F.3d 964 (11th Cir. 2005) .......................................................................21, 22

*Coca-Cola Co. v. Tropicana Prods., Inc.,*
  690 F.2d 312 (2d. Cir. 1982) ........................................................................17, 20

*Davidoff & Cie, S.A. v. PLD Int'l Corp.,*
  263 F.3d 1297 (11th Cir. 2001) .........................................................................24

*Energy Four, Inc. v. Dornier Medical Sys.,*
  765 F. Supp. 724 (N.D. Ga. 1991)..........................................................20, 21, 24

*Ferrero v. Associated Materials, Inc.,*
  923 F.2d 1441 (11th Cir. 1991).........................................................................22

*Hickson Corp. v. N. Crossarm Co., Inc.,*
  357 F.3d 1256 (11th Cir. 2004) .........................................................................12

*Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,*
  716 F.2d 833 (11th Cir. 1983).........................................................................20

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,*
  299 F.3d 1242 (11th Cir. 2002) ..........................................................9, 10, 12, 17

*Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms. Co.,*
No. 91-7099, 1993 WL 21239 (E.D. Pa. Jan. 29, 1993) .................................... 14

*Johnson & Johnson-Merck Consumer Pharms. Co. v. SmithKline Beecham Corp.,*
960 F.2d 294 (2d Cir. 1992) ........................................................................ 11, 12

*Laboratorios Roldan v. Tex Int'l, Inc.,*
902 F. Supp. 1555 (S.D. Fla. 1995) .................................................................. 24

*Morgan Stanley DW, Inc. v. Frisby,*
163 F. Supp. 2d 1371 (N.D. Ga. 2001) ............................................................. 10

*Novartis v. Johnson & Johnson-Merck Consumer Pharms. Co.,*
290 F.3d 578 (3d Cir. 2002) ............................................................................ 16

*Sandoz Pharm. v. Richard-Vicks,*
902 F.2d 222 (3d Cir. 1990) ............................................................................ 14

*SmithKline Beecham Consumer Healthcare v. Johnson & Johnson Merck Consumer Pharmaceuticals Co.,*
2001 WL 588846 (S.D.N.Y. June 1, 2001) ....................................................... 13

*Spiegel v. City of Houston,*
636 F.2d 997 (5th Cir. 1981) ........................................................................... 22

*Stiffel Company v. Westwood Lighting Group,*
658 F.Supp. 1103 (D. N.J. 1987) ..................................................................... 15

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,*
915 F. Supp. 360 (S.D. Fla. 1996) ................................................................... 18

*United Industries Corp. v. Clorox Co.,*
140 F.3d 1175 (8th Cir. 1998) .................................................................... 12, 14

*W.L. Gore & Assocs., Inc. v. Totes Inc.,*
788 F. Supp. 800 (D. Del. 1992) ..................................................................... 23

iv

## STATUTES

15 U.S.C. § 1125(a) ........................................................................11

## OTHER AUTHORITIES

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:25, at 27-47 ........................................................................11

5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 30.50 at 30-117 (4th ed. 2008) ........................................................9

Verizon Website, http://phones.verizonwireless.com/3g/ ........................5

## RULES

FED. R. CIV. P. 65(b) ........................................................................9

## I.   PRELIMINARY STATEMENT

Cellco Partnership d/b/a Verizon Wireless ("Verizon") is currently running misleading advertisements concerning AT&T Mobility LLC's ("AT&T") wireless service. In October, 2009, Verizon embarked on an advertising campaign designed to mislead consumers about the scope of AT&T's wireless coverage. Verizon's initial advertisements utilized large swaths of blank and white spaces in "3G" (short for "third generation" of network engineering) coverage maps to communicate to consumers that AT&T consumers are "out of touch" in vast areas of the United States where they have no "3G" coverage. In response to AT&T's request that Verizon stop running these false advertisements, Verizon made minor changes to them, but continued with its plan to deceive consumers into believing that AT&T customers cannot communicate in areas where they have no "3G" coverage.

In the new advertisements comparing its "3G" coverage to AT&T's "3G" coverage, Verizon is displaying maps of the United States that purport to show each carrier's "3G" coverage. The maps use color to depict the areas of the country in which each carrier has "3G" coverage and blank or white space in the areas of the country where "3G" coverage is not available. Consumers are interpreting the white or blank space on the maps to mean that AT&T customers who are not in an AT&T "3G" coverage area have no wireless coverage

whatsoever, and therefore have no ability to use their wireless devices for any purposes in vast areas of the country. This interpretation is not surprising as Verizon, in its own coverage maps, uses white space to inform customers that no coverage of any kind exists. Contrary to the misleading message conveyed by Verizon's advertisements, AT&T customers can fully use their wireless devices outside of a "3G" coverage area and undisputedly have coverage in areas depicted by the white or blank spaces on the maps used in Verizon's advertisements.

Survey evidence submitted with this motion convincingly demonstrates that Verizon's use of the AT&T map in the advertisements is misleading. Verizon's misleading advertisements go to the heart of the services consumers expect a wireless company to deliver. By communicating that AT&T customers have no coverage in large parts of the country, Verizon is misleading the public about an essential component of the services AT&T offers. As a result of the misleading claim, AT&T is losing incalculable market share, invaluable goodwill that it has spent billions of dollars to develop among consumers, and the significant investment it has made in its wireless network. This harm is substantial and irreparable. The Court cannot, at the end of the case, return to AT&T its market share and the customer goodwill it is currently losing -- indeed, those losses cannot even be quantified with precision.

This case is not about the quality of AT&T's and Verizon's respective "3G"

networks. Both carriers have national "3G" networks. AT&T's "3G" network is faster than Verizon's "3G" network on a national basis – that quality difference is not at issue here. AT&T also acknowledges that Verizon's "3G" network covers more geographical space than AT&T's "3G" network on a national basis, although AT&T's "3G" network covers virtually all of the major population centers. AT&T has no quarrel with Verizon advertising its larger "3G" network. But when Verizon deceptively misrepresents to consumers that AT&T customers can communicate only within the "3G" or depicted coverage area, and that outside the depicted coverage area AT&T customers cannot communicate, Verizon has stepped over the line of legitimate comparative advertising.

AT&T seeks narrow, tailored relief. AT&T does not seek to stop Verizon from running its advertisements, nor does it seek to change the words Verizon uses in the advertisements. At this time, AT&T seeks only an order prohibiting Verizon from displaying, in the "Bench" advertisement, or in any other advertisement, a map of AT&T's "3G" coverage in which AT&T's non-"3G" coverage areas are depicted by white or blank space. This limited relief is necessary to prevent consumers from being misled by the maps into believing that AT&T offers no wireless service in large parts of the United States. The Court should enter a temporary restraining order because Verizon should not be permitted to benefit from its misleading use of coverage maps while the Court sets a schedule for a

3

preliminary and permanent injunction hearing, especially in light of the fact that we are approaching the busiest time of year for the purchase of wireless service.

## II.  STATEMENT OF FACTS

Over the last several years, the competition in the market for wireless communication services and products has increased dramatically. (Wilson Decl. ¶ 4). As the market matures and consumers become more knowledgeable about the variety of functions available through wireless networks, wireless companies actively compete for consumers and encourage them to switch to their respective wireless companies with promises of better quality, price and/or some other value deemed by consumers to be material to the decision to purchase wireless services. (*Id.*).

Verizon and AT&T have national "3G" networks. (*Id.* at ¶ 5). One of the critical differences between a "3G" network and other wireless networks is the speed by which a customer can perform certain data functions. (*Id.*). A "3G" network provides increased bandwidth for uploading and downloading data and video for wireless devices. (*Id.*).

Earlier this month, Verizon began a new advertising campaign promoting its "3G" network coverage area as compared to AT&T's. (*Id.* at ¶ 11). The campaign

consists of radio, print, and television advertisements.[1] (*Id.*). In one of the television advertisements and at least one radio advertisement, Verizon falsely claimed that AT&T customers were "out of touch" where AT&T "3G" coverage is not available. (*Id.* at ¶ 12, and Ex. B). Moreover, in both television advertisements and in print advertisements, Verizon displayed a "3G" coverage map attributed to AT&T with large swaths of white or blank areas (or no coverage) to bolster its misleading message that customers with AT&T service are "out of touch" in large parts of the United States. (*Id.* at ¶ 13, and Ex. B). The fact that Verizon initially ran advertisements falsely claiming that AT&T customers were "out of touch" when they had no "3G" coverage unequivocally shows that Verizon designed the advertisements to deceive consumers into believing that AT&T customers could not communicate in the areas shown as blank or white spaces in the maps in the advertisements.

On October 7, 2009 AT&T contacted Verizon and requested that the advertisements be withdrawn from circulation or modified to be accurate because they were literally false. (*Id.* at ¶ 14). In response, Verizon removed the words "out of touch" from the advertisements and superimposed the phrase "Voice & data services available outside 3G coverage areas" in small font at the end of the

---

[1]     Immediately prior to filing its motion for temporary restraining order and supporting brief, AT&T discovered that Verizon has also now incorporated this campaign into its website at http://phones.verizonwireless.com/3g/.

television advertisements. (*Id.* at ¶ 15).

In one of the modified advertisements that AT&T challenges here, Verizon displays what purports to be an AT&T "3G" network coverage map with large swaths of white or blank space. (*Id.* at ¶ 18). The white and blank spaces are communicating the message that customers with AT&T service are not able to use their wireless devices, at all, in various parts of the United States. (*Id.* at ¶ 27, and Ex. B). Verizon's advertisements also depict AT&T customers as frustrated or sad and unable to meet their friends as the map showing swaths of white or blank space hovers over the fictional AT&T customer's head, reinforcing the misleading message conveyed by the maps: that AT&T has <u>no</u> coverage and thus AT&T customers cannot use their wireless devices in large portions of the United States. (*Id.* at ¶¶ 25 - 27, and Ex. B).

As confirmed by a consumer survey, Verizon's purported solution has done nothing to change the misleading message in its advertisements. (*Id.* at ¶ 16). By continuing to include the misleading "3G" coverage maps in its advertisements, Verizon continues to convey the misleading message that AT&T has no coverage of any kind in the white or blank space depicted in the maps.

A. **AT&T's Networks.**

Contrary to the message conveyed in Verizon's advertisement, there are very few places in the United States in which no wireless coverage is available for

AT&T's customers. (*Id.* at ¶ 31). AT&T has spent billions of dollars to make sure its wireless network covers almost the entire populated country. (*Id.* at ¶ 28).

In addition to its "3G" network, AT&T covers the United States with a ubiquitous wireless network called "2.5G" GSM/EDGE. (*Id.* at ¶ 6).[2] The coverage area of AT&T's "2.5G" GSM/EDGE network exceeds that of its "3G" network. (*Id.*, and Ex. A). The "2.5G" GSM/EDGE network (with roaming partners) covers 1.75 million square miles of the country and is available to approximately 296 million people where they live and work. (*Id.* at ¶ 7, and Ex. A). Accordingly, when AT&T's customers are not in a "3G" network area, they are typically communicating on AT&T's "2.5G" GSM/EDGE network. (*Id.* at ¶ 8).

Although AT&T's "2.5G" GSM/EDGE network does not offer wireless data speeds that are as fast as a "3G" network, it does provide consumers the full ability to make telephone calls, browse the Internet, including social networking sites, stream audio/video, or send electronic mail and text messages. (*Id.* at ¶ 9). In fact, prior to the advent of "3G" networks, AT&T's "2.5G" GSM/EDGE network supported the hugely popular iPhone for more than a year, and still supports millions of iPhones and other wireless devices currently in use. (*Id.* at ¶ 10). Thus,

---

[2]    In addition to the "2.5G" GSM/EDGE network, AT&T also operates a "2.0G" GSM/GPRS network. The "2.0G" GSM/GPRS network is not as fast as the "2.5G" GSM/EDGE network, but allows AT&T customers to make and receive telephone calls and perform basic data activities (electronic mails and text messages). (Wilson Decl. ¶ 6).

even in non-"3G" areas, AT&T customers can make telephone calls, browse the Internet, including social networking sites, stream audio/video, or send electronic mails and text messages. (*See id.* ¶¶ 9 - 10).

**B.    Verizon's "Bench" Television Ad.**

The current version of Verizon's "Bench" television advertisement begins with an announcer stating "if you want to know why your "3G" coverage works so great on Verizon Wireless, there's a map for that." The Verizon "3G" coverage map then appears on the screen. (*Id.* at ¶ 22, and Ex. D). Next the announcer states that with Verizon's "3G" coverage, you can make "plans on the go" and Verizon's "3G" coverage map then appears on the screen again. (*Id.* at ¶ 23 and Ex. D).

After these two statements, the announcer's tone of voice changes and he says: "If you want to know why your friend's "3G" coverage is spotty, there's a map for that too." (*Id.* at ¶ 24 and Ex. D). Verizon then displays a "3G" coverage map attributed to AT&T with large swaths of white or blank space. (*Id.* at ¶ 25, and Ex. D). Right next to the map is a lone character sitting on a bench unable to meet her friends, doing nothing, and appearing to be frustrated or sad. (*Id.* at ¶ 26 and Ex. D).

It cannot be disputed that white or blank space on a coverage map traditionally conveys an inability to access information or communicate. (*Id.* at

¶ 19 and Ex. C). According to the coverage map legend on Verizon's, T-Mobile's and Sprint's websites, the areas colored white, or left blank on their maps represent areas in which there is no coverage whatsoever.[3] (*Id.* at ¶ 20 and Ex. C).

By depicting AT&T's non-"3G" coverage as blank or white space on the maps next to an AT&T customer who is unable to meet her friends or do anything with her wireless device, this advertisement misleads consumers into believing that AT&T's customers have no coverage whatsoever when they are outside of AT&T's depicted coverage area. (*Id.* at ¶ 27, and Ex. D).

## III.   ARGUMENT AND AUTHORITY

The Court has the power to enter the emergency injunctive relief AT&T requests. FED. R. CIV. P. 65(b). A primary justification for a temporary restraining order is to preserve the status quo in order to allow the Court to render a meaningful decision on the merits.[4] *See Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002) (court recognized

---

[3]    Similarly, AT&T's coverage maps designate "no service available" with a noticeably lighter shade of color than that used on its map to indicate the areas in which coverage is available.

[4]    AT&T seeks to prohibit false advertising, not to mandate action by Verizon. The status quo in Lanham Act cases is prior to the false advertising. *See* 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 30.50 at 30-117 (4th ed. 2008) (stating that the last, peaceable, non-contested status of the parties in a Lanham Act case is the time prior to the alleged infringing conduct).

that preliminary injunction is appropriate relief in false advertising cases).

To secure a temporary restraining order, the movant must establish:

> "(1) a substantial likelihood of success on the merits of the underlying case, (2) . . . irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest."[5]

*Allen v. Suntrust Banks, Inc.*, 549 F. Supp. 2d 1379, 1381 (N.D. Ga. 2008) (alteration in original) (quoting *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002)). As discussed below, AT&T meets the standards for a temporary restraining order and requests that the Court enter an order that prohibits Verizon from displaying, in the "Bench" advertisement, or any other advertisement, a map of AT&T's "3G" coverage in which AT&T's non-"3G" coverage areas are depicted by white or blank space.

## A. AT&T IS LIKELY TO SUCCEED ON THE MERITS

### 1. Verizon's Misleading Claim Is Actionable Under The Lanham Act.

Section 43(a) of the Lanham Act states, in pertinent part:

> (1) Any person who ... uses in commerce any ... false or misleading description of fact, or false or misleading representation of fact, which -

---

[5]    An application for temporary restraining order is governed by the same standard as an application for preliminary injunction. *Morgan Stanley DW, Inc. v. Frisby*, 163 F. Supp. 2d 1371, 1374 (N.D. Ga. 2001). The terms are used interchangeably in citations throughout this brief.

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

Section 43(a) of the Lanham Act offers broad protection against false advertising. As such, Section 43(a) vindicates a consumer's right to be told the truth, *as well as* a competitor's right to fair tactics in the marketplace. 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 27:25, at 27-47 - 27-48 (4th ed. 2008) (emphasis added).

## 2.   AT&T Is Likely To Succeed On Its Claim That Verizon's Ad Is Misleading Under The Lanham Act.

To prove false advertising under the Lanham Act, a plaintiff must show: (1) the advertisements of the opposing party are false or misleading; (2) the advertisements deceive, or have the capacity to deceive consumers; (3) the deception has a material effect on purchasing decisions; (4) the misrepresented product or service is sold in interstate commerce; and (5) The movant has been - or is likely to be - injured as a result of the false advertising. *Johnson & Johnson-Merck Consumer Pharms. Co. v. SmithKline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992). As discussed below, AT&T is likely to succeed on each of these

elements.

### a. AT&T Is Likely To Satisfy The First Element Of The Lanham Act Test: Verizon's Ad Is Misleading.

To satisfy the first element of its Lanham Act claim, AT&T must demonstrate that Verizon's advertisement is false, or literally true but misleading. *Johnson & Johnson Vision Care, Inc.*, 299 F.3d at 1247 (citing *Johnson & Johnson-Merck Consumer Pharms. Co. v. SmithKline Beecham Corp.*, 960 F.2d at 297); *see also Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1261 (11th Cir. 2004). Whether an advertisement is misleading depends on the message it conveys to consumers. *United Industries Corp. v. Clorox Co.*, 140 F.3d 1175, 1182-83 (8th Cir. 1998).

### i. Verizon's Misleading Advertisement.

The Verizon "Bench" television advertisement states "if you want to know why your friend's "3G" coverage is spotty, there's a map for that too". (Wilson Decl. ¶ 24, and Ex. D). At the same time, a "3G" coverage map attributed to AT&T appears showing large swaths of white or blank space over the United States. (*Id.* at ¶ 25, and Ex. D). At the same time that this map is being displayed, the advertisement depicts a character sitting alone on a bench, looking sad or frustrated, unable to meet her friends or do anything. (*Id.* at ¶ 26, and Ex. D). The AT&T "3G" coverage map displayed next to this disappointed AT&T customer and again near the end of the advertisement misleads consumers into believing that

AT&T customers have no coverage whatsoever when they are outside of the depicted coverage area and thus cannot use their wireless devices in many parts of the United States. (*Id.* at ¶ 27, and Ex. D).

When determining the meaning of an advertisement, courts should use logic and common sense and consider both the intended audience of the advertisement and the intended product usage. *See SmithKline Beecham Consumer Healthcare v. Johnson & Johnson Merck Consumer Pharmaceuticals Co.*, 2001 WL 588846, at *9 (S.D.N.Y. June 1, 2001) (citations omitted).

White or blank space on a coverage map indisputably conveys an inability to access information or communicate. (Wilson Decl. ¶ 19). According to the coverage map legend on Verizon's, T-Mobile's and Sprint's websites, the areas colored white, or left blank, on their maps represent areas in which there is no coverage whatsoever. (*Id.* at ¶ 20, and Ex. C). By showing white or blank spaces in a map, and at the same moment, showing a character who appears disappointed or frustrated because she cannot use her wireless devices, Verizon communicates that AT&T customers get no coverage whatsoever and are unable to communicate when they are outside of AT&T's depicted coverage area.

## ii. The Message Communicated In This Advertisement Is Misleading.

When AT&T customers are outside of "3G" coverage, they are not without any coverage whatsoever. (*See Id.* at ¶ 8). Instead, they are typically

communicating on AT&T's "2.5G" GSM/EDGE network, which provides consumers the full ability to browse the Internet, including social networking sites, stream audio/video, or send electronic mails and text messages. (*Id.*). The "2.5G" GSM/EDGE network (with roaming partners) covers 1.75 million square miles of the country and is available to approximately 296 million people. (*Id.* at ¶ 7).

When outside of a "3G" area, AT&T's customers have access to a wireless network and can perform the same functions as those accessing a "3G" network. (*See Id.* at ¶ 9). Although the speed with which those functions occur may vary according to the type of network accessed, the ability to make telephone calls, browse the Internet, stream audio/video or send electronic mails and text messages is available on both AT&T networks. (*Id.*). Verizon's advertisements claiming the contrary are misleading and are intended to harm, and are harming, AT&T.

### b. AT&T Is Likely To Satisfy The Second Element Of The Lanham Act Test: Verizon's Ad Deceives Consumers.

Once the court determines the content of the challenged message, it must then decide if that message is deceiving. *United Industries Corp. v. Clorox Co.,* 140 F.3d at 1182; *see also Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-Poulenc Rorer Pharms. Co.,* No. 91-7099, 1993 WL 21239, at *9 (E.D. Pa. Jan. 29, 1993). "It is not the court's opinion but public reaction that is the measure of a commercial's impact." *Id.* (citing *Sandoz Pharm. v. Richard-Vicks*, 902 F.2d 222, 228-29 (3d Cir. 1990)); *American Brands Inc. v. R.J. Reynolds Tobacco Co.,*

413 F. Supp. 1352, 1357 (S.D.N.Y. 1976) ("the court's reaction is at best not determinative and at worst irrelevant").  Reliable consumer surveys or market research may be used to demonstrate the meaning an advertisement has to the target audience. *Stiffel Company v. Westwood Lighting Group,* 658 F.Supp. 1103, 1111 (D. N.J. 1987).

Robert Reitter, a widely recognized consumer perception expert, has performed a statistically valid, double-blind, mall intercept study using methodology approved by the Federal Judicial Center.  The study determined whether Verizon's use of the AT&T "3G" coverage map displayed in the "Bench" advertisement misleads consumers into believing that AT&T customers have no coverage whatsoever in the white or blank space depicted by the map attributed to AT&T in the "Bench" advertisement. (Reitter Study, 9 - 10).[6]

While there are several significant findings in the Reitter Study that support the finding that Verizon's "Bench" advertisement misleads consumers, the key point is as follows:  The study shows that there is a 23.5% net deception level associated with the "3G" coverage map attributed to AT&T in the "Bench" advertisement. (*Id.*).  When asked whether the Verizon "Bench" advertisement

---

[6]    A copy of the Study to Measure Consumer Perceptions of Verizon Wireless Advertising Containing Maps That Depict 3G Coverage Areas for Verizon Wireless and AT&T (the "Reitter Study") is attached to the Declaration of David L. Balser as Exhibit A.

showed that AT&T does not have coverage at all in certain parts of the country, 53.0% of all respondents tested answered affirmatively. (*Id.*). When the same question was asked of a control group of respondents who were shown the "Bench" advertisement with no changes except the removal of the map attributed to AT&T, 29.5% responded affirmatively, which leads to a 23.5% net deception level. (*Id.*).

Given that the appearance of the "3G" coverage map in the "Bench" advertisement was the only variable between the two versions of the "Bench" advertisement shown to the respondents in the test group and the control group, the survey shows that almost one in four consumers, (23.5%), believe that the "Bench" advertisement states that AT&T customers have no coverage at all in the white or blank space included in the coverage map. (*Id.*).

Thus, despite Verizon's references to "3G" and the inclusion of a disclaimer in small print at the end of the ad stating "Voice and data services available outside 3G coverage area", the overwhelmingly powerful visual imagery of the blank space on the AT&T coverage map leads consumers to interpret the maps as communicating that AT&T has no coverage of any kind outside of the 3G coverage areas. (*See id.*).

Courts have acknowledged that consumer surveys showing that respondents were confused by the advertisement at issue as little as 7.5% of the time is

sufficient to conclude that an advertisement deceives consumers. *See Novartis v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 594 (3d Cir. 2002) (confusion rate of 15% was sufficient to demonstrate a likelihood of substantial consumer confusion) (citing *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d. Cir. 1982) (consumer survey evidence demonstrating that 7.5% of consumers were confused by the advertisement at issue found to be sufficient to show that consumers were deceived)). Here, the level of deception materially exceeds the thresholds courts have established to support preliminary injunctive relief.

### c. Verizon's Claims Are Material.

To succeed on the third element of a claim under the Lanham Act, "the plaintiff must establish that the defendant's deception is likely to influence the purchasing decision." *Johnson & Johnson Vision Care*, 299 F.3d at 1250 (internal citations omitted). AT&T's product is the delivery of wireless coverage to its customers. A misleading claim about the extent of such coverage, or AT&T's ability to provide that coverage goes to the very heart of AT&T's business. A plaintiff may satisfy the materiality requirement "by proving that the defendants misrepresented an inherent quality or characteristic of the product." *Id.*; *see also BellSouth Telecomm., Inc. v. Hawk Comm., LLC*, No. 04-280, 2004 WL 1085324, at *13 (N.D. Ga. Apr. 12, 2004) (finding a defendant's "DSL speed" claim has "a

material effect on consumers' purchasing decisions" because "speed is an inherent quality or characteristic of Internet service that is likely to influence consumers' decisions regarding which Internet service to purchase from which provider"). A product's availability has been held to go directly to one of that product's "characteristics". *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 915 F. Supp. 360, 368 (S.D. Fla. 1996).

Verizon's misleading claim relates to the ability of AT&T's customers to use their wireless devices throughout the United States. Based on the survey evidence submitted herewith at least 23.5% of consumers who watch and listen to Verizon's television advertisement believe that AT&T has no coverage at all in many parts of the United States, when, in fact, AT&T has service available throughout the United States. (Reitter Study, 9 - 10). Moreover, to the extent consumers view the maps depicting coverage for purposes of determining whether they can make an emergency 911 call in a particular area, consumers are being led to believe that this important public safety service is not available to them in certain areas of the country when, in fact, it is. (Poarch Decl. ¶¶ 5 and 6).

A claim about whether or not a wireless device will work goes to the inherent quality of AT&T's wireless network, and is material to a consumer's decision to purchase wireless services. As a result, Verizon's misleading claims unfairly influence consumers to choose Verizon or leave AT&T because,

according to Verizon's advertisement, AT&T customers have no coverage and thus cannot use their wireless devices whatsoever when they are outside of AT&T's depicted coverage area.

### d.    Verizon's Misleading Claims Affect Interstate Commerce.

In order to satisfy the fourth element of the Lanham Act, AT&T must establish that Verizon's claim affects interstate commerce. By advertising nationwide, Verizon's advertisement affects interstate commerce. *BellSouth Telecomm., Inc.*, 2004 WL 1085324 at *13 (ruling that defendant's claims affected interstate commerce because defendant advertised "in a number of states throughout the southeastern United States").

### e.    AT&T Has Been And Continues To Be Harmed by Verizon's Misleading Ad.

The wireless business is highly competitive, and AT&T and Verizon, the two largest wireless carriers, vigorously compete for the existing and potential customers of the other. (*See* Wilson Decl. ¶ 4). When Verizon, AT&T's competitor, misleads consumers by conveying the message that AT&T's customers have no coverage whatsoever in areas depicted on a map as white or blank space, the harm to AT&T is readily apparent. If Verizon is allowed to continue publishing its misleading claim, it will undermine the public's confidence in the accuracy of AT&T's rightful claim that customers can communicate with their wireless devices when they are not on a "3G" network. (*Id.* at ¶ 32).

Furthermore, the fourth quarter of the year is the most vigorous and important marketing season for the wireless industry, and damage to competition during the fourth quarter is particularly harmful to the public's interest in fair competition. (*Id.* at ¶ 33). The full measure of damages that AT&T will continue to suffer from the publication of Verizon's misleading claims is difficult if not impossible to calculate. (*Id.* at ¶ 34). No amount of corrective advertising would undo the damage. (*Id.*).[7]

## B.   AT&T IS SUFFERING IRREPARABLE HARM AND THE BALANCE OF EQUITIES STRONGLY FAVORS INJUNCTIVE RELIEF.

### 1.   AT&T Is Suffering Irreparable Harm As A Result of Verizon's Actions.

Verizon has stepped outside the boundaries of legitimate and fair competition and made a misleading claim about AT&T's ability to provide a wireless service to its customers. Where a consumer survey or market study demonstrates that some consumers are, in fact, misled by the advertising at issue, these surveys and/or market research studies may be used to supply "the causative

---

[7]    AT&T's proof that the Verizon's advertisements constitute false advertising under the Lanham Act also satisfies AT&T's burden under Georgia's False Advertising statute and Georgia's Uniform Deceptive Trade Practices Act. *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 839 (11th Cir. 1983) (Georgia's False Advertising statute and Uniform Deceptive Trade Practices Act involve the same dispositive questions as the Federal Lanham Act); *see also Energy Four, Inc. v. Dornier Medical Sys.*, 765 F. Supp. 724, 731 (N.D. Ga. 1991).

link" between the advertisements and a plaintiff's irreparable injury. *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 317 (2d Cir. 1982). Once a plaintiff has shown, through survey evidence, that the defendant's representations mislead the public and affect consumers' purchasing decisions, the likelihood of injury can be demonstrated by showing that the parties are competitors. *Energy Four, Inc.*, 765 F.Supp. at 734 ("Misleading comparative claims deprive a plaintiff of a legitimate competitive advantage and reduce a consumer's incentive to purchase the plaintiff's product. Given the intense and direct competition between the parties, it is clear that the court may presume that any false or misleading statements made by either party will injure the other."). Moreover, it is well settled that the loss of customers and goodwill is an irreparable injury. *BellSouth Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (loss of customers and goodwill constitutes irreparable harm).

As AT&T has shown, the Verizon maps are misleading and deceiving consumers into believing that AT&T offers no wireless coverage outside of the depicted coverage area. (Reitter Study 9 - 10). If Verizon is permitted to continue its misleading claims, AT&T will be deprived of any competitive advantage it legitimately has, and consumers' incentive to choose AT&T will be reduced. Given the intense and direct competition between the parties, AT&T has and will continue to be irreparably harmed by Verizon's misleading advertisements.

As a result of Verizon's misleading claim, the enormous goodwill AT&T has built up among its wireless network consumers, by investing billions to ensure that its networks provide wireless service, is being eroded. That loss of goodwill – along with customer confusion about when and where they will be able to access AT&T's network, is impossible to calculate with precision.

This Court can do nothing at the end of this case to rectify those losses. It cannot return the goodwill that AT&T is losing every week, nor can it force customers who have left AT&T, or chosen Verizon over AT&T as a result of Verizon's misleading advertisements, to change their mind. For this reason, these losses constitute irreparable harm. *See, e.g., BellSouth Telecommuns., Inc.*, 425 F.3d at 970 (loss of customers and goodwill constitutes irreparable harm); *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (affirming district court's preliminary injunction because plaintiff would otherwise "lose its long-time customers," and because "the loss of customers and goodwill is an 'irreparable' injury"") (quoting *Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir. 1981)).

## 2.    A Temporary Restraining Order Would Cause No Cognizable Harm to Verizon

The order AT&T seeks would do nothing more than require Verizon to stop making a misleading claim about AT&T's network. Issuing a temporary restraining order "will not prohibit [Defendant] from selling its products or

22

truthfully advertising those products," and will simply "require that the product be marketed in a forthright manner in the future." *W.L. Gore & Assocs., Inc. v. Totes Inc.,* 788 F. Supp. 800, 812 (D. Del. 1992).

Any loss Verizon suffers in having to stop its misleading claim is a consequence of its own wrongdoing. In these circumstances, any conceivable harm that Verizon might identify as stemming from a temporary restraining order is not cognizable. *See Ardito v. City of Providence*, 263 F. Supp. 2d 358, 373 (D.R.I. 2003) (noting that any burdens that an injunction imposed on defendant "would result from a situation of the [defendant]'s own making," and defendant therefore "cannot cite the possible consequences of that decision as a hardship that weighs against granting a preliminary injunction").

Furthermore, the relief AT&T seeks is narrow and tailored. AT&T does not seek to stop Verizon from running its advertisement, nor does it seek to change the words Verizon uses in the advertisement. AT&T seeks an order only prohibiting Verizon from displaying, in the "Bench" advertisement, or in any other advertisement, a map of AT&T's "3G" coverage in which AT&T's non-"3G" coverage areas are depicted by white or blank space, to prevent consumers from being misled by the maps into believing that AT&T offers no wireless service in large parts of the United States. A map that accurately depicts AT&T's non-"3G" networks is attached hereto as Exhibit A.

## C.    A TEMPORARY RESTRAINING ORDER IS CONSISTENT WITH THE PUBLIC INTEREST.

Finally, and for similar reasons, a temporary restraining order would serve the public interest in limiting customer confusion in the marketplace and ensuring that consumers can rely on the claim made in advertisement as being truthful.

There is a strong public interest in fair and truthful advertising. Courts in this Circuit routinely recognize that "the public interest is served by preventing consumer confusion in the marketplace." *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (affirming preliminary injunction in trademark infringement action); *BellSouth Telecomm., Inc.*, 2004 WL 1085324 at *14 (recognizing a "strong public interest in ensuring that consumers receive truthful information"); *Laboratorios Roldan v. Tex Int'l, Inc.*, 902 F. Supp. 1555, 1571 (S.D. Fla. 1995) ("[t]he public is entitled to be free from deception and confusion" and "[i]njunctive relief will serve the public interest by immediately stopping Defendants' deception of consumers"); *Energy Four*, 765 F. Supp. at 734 ("[c]onsumer deception, by its very nature, is against the public interest"). An injunction would also serve the public interest by reserving to companies the goodwill they earn by investing in and improving their wireless networks, improvements which benefit the public.

Furthermore, coverage maps are important to consumers from a public safety perspective. These maps indicate to consumers those areas in which they

24

will, or will not, be able to make emergency 911 calls from wireless phones during national disasters and other emergencies. (Poarch Decl. ¶ 5). Misleading comparisons of wireless carriers' coverage interferes with this important public safety need. (*Id.* at ¶ 6).

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant AT&T's motion for a temporary restraining order.

Respectfully submitted, this 3rd day of November, 2009.

_David Balser_
David L. Balser
Georgia Bar No. 035835
Nathan L. Garroway
Georgia Bar No. 142194
Tracy Klingler
Georgia Bar No. 105450

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
(404) 527-4000
(404) 527-4198 (facsimile)

Neal S. Berinhout
Georgia Bar No. 054687
AT&T Mobility LLC
1025 Lenox Park Blvd.
Suite C575
Atlanta, Georgia  30319

*Attorneys for AT&T Mobility LLC*

## <u>CERTIFICATE UNDER LOCAL RULE 7.1(D)</u>

Pursuant to Local Rule 7.1(D), I certify that the foregoing pleading is a computer-generated document, prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1(B).

David L. Balser
Georgia Bar No. 035835