**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

AT&T MOBILITY LLC,                          :
                                            :
             Plaintiff,              :
                                            :
      v.                                  :    Civil No. 1:09-cv-03057-TCB
                                            :
CELLCO PARTNERSHIP d/b/a                    :
VERIZON WIRELESS,                           :
                                            :
             Defendant.              :
_____ :

## FIRST AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DAMAGES

This First Amended Complaint seeks a temporary restraining order, preliminary injunction and a permanent injunction to stop Cellco Partnership d/b/a Verizon Wireless ("Verizon") from disseminating false advertisements and misleading coverage maps depicting AT&T Mobility LLC's ("AT&T") voice and data network in direct mail, television, print, and Internet advertisements. AT&T has suffered and continues to suffer irreparable harm as a result of Verizon's false advertisements and misleading coverage maps. AT&T requests an immediate hearing on its request for injunctive relief.

Verizon is running a series of advertisements which falsely communicate that AT&T does not have wireless data coverage throughout much of the United

States.   These advertisements are literally false because they depict AT&T customers and/or wireless devices that do not have wireless connectivity (in other words, they are "out of touch") or cannot perform certain wireless data applications.  However, this is patently false.  The fact is that AT&T has a wireless data network which covers over 300 million people and 97% of the U.S. population.   An AT&T customer can obtain connectivity and perform certain wireless data functions anywhere on AT&T's wireless data network.

In support of these false advertisements, Verizon displays "3G" coverage maps of both Verizon and AT&T and says "there's a map for that" to explain why the AT&T customer lacks connectivity or cannot perform a wireless data application.  These coverage maps are misleading because they communicate to consumers that AT&T lacks wireless connectivity in the "white" or "blank" spaces despite the fact that AT&T has a wireless data network in nearly all the "white" or "blank" spaces.  The important point is that when a customer is not on AT&T's "3G" network, that does not mean that the customer is without wireless coverage. The only advantage to the customer of being on a "3G" network is speed, and AT&T has the nation's fastest "3G" network.  A customer can do everything on AT&T's "2.5G" or GSM/EDGE network that he or she can do on a "3G" network,

it just might be slower in a non-"3G" coverage area, depending on the data application.

## SUMMARY OF THE ACTION

1.     This action for injunctive relief and damages arises from false and misleading comparative advertising by Verizon in violation of the Lanham Act § 43(a), 15 U.S.C. § 1125(a), and related Georgia state laws.

2.     The wireless business is highly competitive, and AT&T and Verizon, the two largest wireless carriers, vigorously compete to take existing and potential customers from the other.

3.     Verizon and AT&T both have deployed "3G" (short for "third generation" of standards for wireless communications defined by the International Telecommunications Union) networks.

4.     The difference between a "3G" network and earlier versions of wireless data networks is the speed by which a customer can perform certain data functions.   A "3G" network provides increased bandwidth for uploading and downloading data and video for wireless devices.

5. AT&T provides wireless data service via three different but complimentary networks: a "2.0" GSM/GPRS network,[1] a "2.5G" GSM/EDGE network and a "3G" network.

6. AT&T's "2.5G" GSM/EDGE network (with roaming partners) is available to approximately 296 million people where they live and work, or 95% of the U.S. population, and covers 1.75 million square miles of the country.

7. AT&T's "3G" network covers approximately 233 million people where they live and work, or 75% of the U.S. population, and is concentrated in U.S. population centers. By contrast, as stated in Verizon's Third Quarter 2009 Investor Briefing, Verizon's mobile broadband or "3G" network covers approximately 284 million people, or 91% of the U.S. population. See http://investor.verizon.com/financial/quarterly/vz/3Q2009/3Q09Bulletin.pdf?t=633933803062736565. AT&T's "3G" network covers approximately 82% of the U.S. population that Verizon covers with its "3G" network.

---

[1] The "2.0G" GSM/GPRS network is not as fast as the "2.5G" GSM/EDGE network, but allows AT&T customers to make and receive telephone calls and perform basic data activities (electronic mails, accessing basic Wireless Access Portals ("WAP"), and text messages). This expands AT&T's coverage to include over 300 million people where they live and work, or approximately 97% of people in the United States.

8.   When customers are not in AT&T's "3G" coverage area, they are typically communicating on AT&T's "2.5G" GSM/EDGE network.  The "2.5G" GSM/EDGE network provides consumers with the full ability to make calls, browse the Internet, including social networking sites, stream audio/video, or send electronic mails and text messages, albeit at slower speeds for some wireless data applications.

9.   Prior to the wider availability of "3G" networks, AT&T's GSM/EDGE network supported the hugely popular and iconic iPhone for more than a year, and still supports millions of iPhones and other wireless devices currently in use.

10.   In October 2009, Verizon began a false advertising campaign improperly disparaging AT&T's wireless data network based solely on Verizon's geographic "3G" network coverage advantage.

11.   This campaign consists of false and misleading direct mail, print, television, and Internet advertisements.  The first two television advertisements Verizon ran as part of the campaign are referred to herein as "Bench" and "College."

12.     Initially, in the "Bench" television advertisement and at least one radio advertisement, Verizon falsely claimed that AT&T customers were "out of touch" where AT&T "3G" coverage is not available.

13.     Verizon also displayed a coverage map attributed to AT&T with large swaths of "white" or "blank" areas (or no wireless coverage) to bolster its misleading message that customers with AT&T service are "out of touch" in large parts of the United States where AT&T lacks "3G" coverage.

14.     On October 7, 2009 AT&T contacted Verizon and requested that the advertisements be withdrawn from circulation or modified to be accurate.

15.     In response to AT&T's request that Verizon stop running the false advertisements, Verizon removed the words "out of touch" from the subject television and radio advertisements and superimposed the phrase "Voice & data services available outside 3G coverage areas" in small font at the end of the television advertisements.

16.     Verizon's slight modifications have done nothing to change the false and misleading messages in its advertisements.   Moreover, Verizon's new advertisements, which started airing on television after this lawsuit was filed last week, effectively reinstate the "out of touch" message Verizon conceded was false and misleading.

17.     The "Bench" and "College" advertisements still falsely communicate that AT&T's wireless devices do not work at all when there is no "3G" coverage available.

18.     In addition, by continuing to include an AT&T coverage map in its advertisements, Verizon deceives consumers into believing that AT&T has no coverage in the white or blank space included in the maps, and thus AT&T customers cannot use their wireless devices in large portions of the United States.

19.     Verizon knows that its use of AT&T coverage maps is misleading because according to the coverage map legend on Verizon's, T-Mobile's and Sprint's websites, the geographic spaces colored "white" or left "blank" on their maps represent areas in which there is no wireless coverage whatsoever.[2]

20.     On approximately November 8, 2009, after AT&T filed this lawsuit, Verizon continued its false advertising campaign with three new television advertisements: "The Island of Misfit Toys," "Naughty or Nice," and "Christmas Blues."

---

[2]     Similarly, AT&T's coverage maps designate "no service available" with a noticeably lighter shade of color than that used on its map to indicate the areas in which coverage is available.

21.    Like "Bench" and "College", these three television advertisements falsely communicate to consumers that their AT&T wireless device will not work outside a "3G" coverage area.

22.    These three new advertisements also utilize the same coverage maps that were used in the "Bench" and "College" television advertisements which deceive consumers into believing that AT&T has no wireless data coverage whatsoever in the large swaths of "white" or "blank" spaces on the maps.

23.    The Court should immediately temporarily restrain, and preliminarily and permanently enjoin Verizon from running the following television advertisements: "Bench," "College," "The Island of Misfit Toys," "Naughty or Nice," and "Christmas Blues."

24.    The Court should immediately temporarily restrain, and preliminarily and permanently enjoin Verizon from falsely advertising that AT&T customers cannot communicate or use their wireless devices when they are not in a "3G" coverage area.

25.    The Court should immediately temporarily restrain, and preliminarily and permanently enjoin Verizon from displaying in any advertisement a map of AT&T's coverage in which AT&T's non-"3G" coverage areas are depicted by

"white" or "blank" space, or otherwise claiming that AT&T customers cannot communicate or use their wireless devices in large areas of the country.

26.     The Court should not permit Verizon's false and misleading advertising to continue damaging AT&T, deceiving and confusing AT&T customers and potential customers, and damaging competition.

## THE PARTIES

27.     AT&T is a provider of wireless voice and data communication services in the United States, with more than 81 million customers.

28.     AT&T is a Delaware limited liability company with its principal place of place of business in Atlanta, Georgia.

29.     Verizon is a Delaware general partnership that purposefully avails itself of the laws of every jurisdiction in the United States, including the State of Georgia, with its principal place of business at One Verizon Way, Basking Ridge, New Jersey, 07920.

30.     The Delaware Secretary of State identifies Verizon's registered agent as the Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware, 19801.

## JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1367.

32.     The Court has jurisdiction over Verizon because it transacts business in Georgia and is otherwise subject to jurisdiction in this State.   In addition, Verizon has committed tortious acts within the state and/or committed tortious injury in this state caused by an act or omission outside the state and engaged in other persistent courses of conduct in this state.

33.     Venue in this District is proper pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS COMMON TO ALL COUNTS

### Fierce Competition Between Verizon and AT&T

34.     For the last several years, there has been fierce competition in the market for wireless communication services and products.   The number of new wireless customers is decreasing as the market becomes more mature.   As a result, wireless companies, including Verizon and AT&T, are increasingly seeking to entice consumers currently receiving wireless service from any number of their competitors to terminate their service and move to them.

35.     Wireless companies are actively attempting to maintain their existing customers.   They also are attempting to entice new customers to purchase their

service based upon better quality, price, or some other value deemed by consumers to be material to the decision to purchase wireless services.

36.    AT&T and Verizon are the two largest wireless providers in the United States.

37.    As competitors, AT&T and Verizon seek to gain advantage over each other and earn consumer loyalty by, among other things, upgrading their networks and adding service features to enable them to make advertising claims about their wireless networks.

## AT&T's and Verizon's "3G" Networks

38.    The key difference between a "3G" network and other wireless data networks is the speed at which consumers can engage in data-centric activities.

39.    Importantly, when a customer is not on AT&T's "3G" network, that does not mean that the customer is without wireless data coverage.

40.    In addition to a "3G" network, AT&T covers the United States with a ubiquitous wireless data network called "2.5G" GSM/EDGE.

41.    When customers are not on AT&T's "3G" network or not in a "3G" coverage area, they are typically communicating on AT&T's "2.5G" GSM/EDGE network.  The "2.5G" GSM/EDGE network provides consumers with the full ability to make calls, browse the Internet, including social networking sites, stream

audio/video, or send electronic mails and text messages, albeit at slower speeds for some wireless data applications.

42.     Prior to the wider availability of "3G" networks, AT&T's "2.5G" GSM/EDGE network supported the hugely popular and iconic iPhone for more than a year, and still supports millions of iPhones and other wireless devices currently in use.

## Summary Of The Misleading Advertisements

43.     During the week of October 5, 2009, Verizon ran at least two different television advertisements and one radio advertisement in response to Apple's successful iPhone campaign stating that "there's an app ("application") for that" -- which touts the multitude of applications that a customer can utilize on his or her iPhone.

44.     The "Bench" advertisement and at least one radio advertisement falsely claimed that AT&T customers who were not in the depicted coverage area were "out of touch."

45.     In response to AT&T's request that Verizon stop running the false advertisements, Verizon removed the words "out of touch" from the subject radio and television advertisements and superimposed the phrase "Voice & data services available outside 3G coverage areas" in small font at the end of the advertisement.

46.     Verizon's slight modifications have done nothing to change the false and misleading messages of these advertisements.

47.     In the "Bench" and "College" advertisements, Verizon displays maps of the United States that purport to show each carrier's "3G" coverage.  The maps use color to depict the areas of the country in which each carrier has "3G" coverage and "white" or "blank" space in the areas of the country where coverage is allegedly not available.

48.     The advertisements promote Verizon's "3G" coverage, and then refer to a coverage map showing that Verizon has widespread "3G" coverage across the United States.  The announcer of the advertisement repeats the phrase "there's a map for that."

49.     The "Bench" and "College" advertisements then conclude by disparaging AT&T's network and services, using the same tag line, "there's a map for that," showing an AT&T coverage map with large amounts of "white" or "blank" space throughout the United States.

### **"Bench"**

50.     The "Bench" television advertisement begins by stating "if you want to know why your "3G" coverage works so great on Verizon Wireless, there's a map for that."  The Verizon coverage map then appears on the screen.

51.     The advertisement then states that with Verizon's "3G" coverage, you can make "plans on the go."  The Verizon coverage map then people up on the screen again.

52.     After these two statements, the announcer's tone of voice changes and he says: "If you want to know why your friend's "3G" coverage is spotty, there's a map for that too."

53.     At this point in the advertisement, an AT&T coverage map appears showing large swaths of white or blank space over the United States. Simultaneously with the appearance of the map, Verizon also depicts a sad AT&T customer sitting alone on a bench because she is not able to use her wireless device to communicate with her friends.

54.     The advertisement then displays both AT&T's and Verizon's coverage maps and claims that Verizon has "5 times more '3G' coverage than the nation's #2 wireless company."

55.     By depicting an AT&T customer unable to meet her friends or do anything with her wireless device next to an AT&T coverage map showing "white" or "blank" spaces throughout much of the U.S., the advertisement falsely communicates that AT&T customers cannot use their wireless device when they are outside of AT&T's coverage area.

56.     Further, the maps deceive consumers into believing that AT&T's customers have no coverage whatsoever in many parts of the United States when they are outside of AT&T's depicted coverage area and thus cannot use their wireless devices in many parts of the United States.

### "College"

57.     The "College" television advertisement starts the same way as the "Bench" advertisement, promoting why customers can do various things on Verizon's network at "3G" speed and referencing Verizon's coverage map.

58.     The announcer's voice then changes, and he says "and if you want to know why some people have spotty "3G" coverage, there's a map for that."

59.     The coverage map of AT&T then appears on the screen showing large swaths of "white" or "blank" spaces. The character in the advertisement tries to use his wireless device but shakes his head expressing disappointment.

60.     The advertisement then displays both AT&T's and Verizon's coverage maps and claims that Verizon has "5 times more '3G' coverage than the nation's #2 wireless company."

61.     As with the false and misleading "Bench" advertisement, by depicting an AT&T customer as being frustrated with his wireless device and shaking his head next to an AT&T coverage map showing "white" or "blank" spaces

throughout much of the U.S., the advertisement falsely communicates that AT&T consumers cannot use their wireless devices when they are outside of the depicted coverage area.

62. Further, the coverage maps deceive consumers into believing that AT&T's customers have no coverage whatsoever when they are outside of AT&T's depicted coverage area and thus cannot use their wireless devices in many parts of the United States.

63. On November 8, 2009, Verizon continued its false advertising campaign with three new television advertisements: "The Island of Misfit Toys," "Naughty or Nice," and "Christmas Blues." While these advertisements are slightly different from the "College" and "Bench" television advertisements, they contain the same false and misleading messages.

## "Island of Misfit Toys"

64. The "Island of Misfit Toys" television advertisement is a parody of the "Rudolph the Red Nose Reindeer" television special that depicts an island to which Rudolph travels after escaping an attack from the Abominable Snow Monster.

65.     The advertisement begins with outdated, discarded toys expressing surprise at the arrival of an Apple iPhone.  The red Charlie-in-the-Box says "Hey! Check out the new guy!"

66.     The spotted elephant, in a surprised manner, asks the iPhone "What are you doing here? You can download apps and browse the web!" and a Dolly for Sue asserts that "Yeah.  People will love you [the iPhone]."

67.     In response, a blue AT&T coverage map depicting large swaths of "white" or "blank" space across the United States appears above the iPhone.  All the toys exclaim "Oh . . ." in dismay, while the iPhone wilts and its screen turns dark.  The toy airplane then assures the iPhone that "you're going to fit right in here!"

68.     AT&T's and Verizon's coverage maps then appear and the announcer states, "with five times more 3G coverage than AT&T, Verizon Wireless is your destination for great gifts."

69.     The image of the sad and wilting iPhone on an island of misfit toys falsely communicates that the iPhone is a broken device because it cannot browse the web or download applications when outside of AT&T's depicted coverage area.

70.    Further, the maps in the advertisement deceive consumers into believing that AT&T's customers have no coverage whatsoever when they are outside of AT&T's depicted coverage area and thus cannot use their wireless devices in many parts of the United States.

### "Naughty or Nice"

71.    The "Naughty or Nice" television advertisement depicts a busy workshop of elves packing various electronic devices into red presents on a conveyor belt.

72.    A red Verizon coverage map floats above the red presents.  As an elf with a checklist calls out names, another elf retrieves a device, looks up at the coverage map, and approvingly states "Nice." The device is then placed in the package.

73.    After a third name is called, the elf retrieves an electronic device that looks similar to an iPhone and a blue AT&T coverage map appears above it. As in Verizon's previous advertisements, the AT&T coverage map depicts large swaths of "white" or "blank" space across the United States.

74.    At the appearance of the AT&T coverage map, production at the workshop halts, the lights go out, and the background music stops.  Looking up at the map, the elf states, "Naughty," and places the device in a blue package.

75.     After production resumes, the elf with the checklist warns, "[g]ood luck browsing the web with that one."

76.     AT&T's and Verizon's "3G" coverage maps then appear and the announcer states, "with five times more 3G coverage than AT&T, Verizon Wireless is your destination for great gifts."

77.     The statement "[g]ood luck browsing the web with that one" while AT&T's coverage map appears on the screen falsely communicates that AT&T customers cannot browse the Internet when outside AT&T's depicted coverage area.

78.     Further, the maps in the advertisement also deceive consumers into believing that AT&T's customers have no coverage whatsoever when they are outside of AT&T's depicted coverage area and thus cannot use their wireless devices in many parts of the United States.

**"Christmas Blues"**

79.     The "Christmas Blues" television advertisement starts with a man leaving a motel in the snow while Elvis Presley's "Blue Christmas" plays in the background.

80.     The man repeatedly shakes his wireless device and the blue AT&T coverage map appears above it.   As in Verizon's previous advertisements, the

AT&T coverage map depicts large swaths of "white" or "blank" space across the United States.

81.    The man is next shown in a nondescript train station and then in the back of a taxi, looking frustrated and vigorously shaking his wireless device.

82.    As the man returns home and embraces his son, the announcer asks, "Want 3G web browsing in more places? There's a map for that," as the camera pans to a red present with a red Verizon coverage map floating above it.

83.    AT&T's and Verizon's coverage maps then appear and the announcer states, "with five times more 3G coverage than AT&T, Verizon Wireless is your destination for great gifts."

84.    The man's repeated shaking of the wireless device in the advertisement falsely communicates that he cannot use his wireless device at all when outside AT&T's "3G" network. Further, depicting the wireless device as unable to work in a non-descript train station and taxi cab is false because AT&T likely has "3G" service in such an urban setting. Even if the train station and taxi cab were intended to depict a location where AT&T does not have any "3G" coverage, the wireless device would still work on AT&T's "2.5G" GSM/EDGE network or "2.0G" GSM/GPRS network.

85.     Furthermore, AT&T's customers using the "2.5G" GSM/EDGE network can perform all of the tasks identified in the "College," "Bench," "Island of Misfit Toys," "Naughty or Nice," and "Blue Christmas" television advertisements.  Thus, even if AT&T's customers are outside of AT&T's "3G" coverage area, they are not without the ability to perform data and voice functions. The distinguishing feature and advantage of a "3G" network is the speed with which the customer can perform certain wireless data functions.

86.     233 million people live and work in areas in which AT&T has "3G" coverage.  By depicting AT&T customers unable to use their phones or by showing the AT&T devices as not working while the displaying the coverage maps, Verizon falsely communicates that AT&T's customers cannot use their wireless devices in areas where they are able to do so.

**Direct Mail, Print and Internet Advertisements**

87.     In its direct mail, print and Internet advertisements, Verizon displays its coverage map next to a coverage map attributed to AT&T.  The map attributed to AT&T shows large swaths of "white" or "blank" space, as if these are areas in which AT&T has no coverage whatsoever.  By depicting AT&T's non-"3G" coverage as "white" or "blank" space in the maps used in Verizon's direct mail, print and Internet advertisements, consumers are being misled into believing that

AT&T's customers have no coverage whatsoever and thus cannot use their wireless devices when they are outside of AT&T's depicted coverage area.

## Five Times More Coverage Claim

88. In all of the advertisements described above, Verizon makes the misleading statement that it has "5 times more '3G' coverage than AT&T." While this statement is literally true based on square miles, it is misleading because the overwhelming majority of the US population lives and works where both Verizon and AT&T have "3G" coverage. Indeed, from a population standpoint, Verizon only has 1.24 times more "3G" coverage than AT&T (285 million people/230 million people).

## Verizon's Advertisements Have Caused And Are Continuing to Cause Irreparable Harm To AT&T

89. Verizon's false advertisements and use of coverage maps to deceive consumers into believing that AT&T customers are without coverage when they are outside of AT&T's "3G" footprint have caused and will continue to cause irreparable harm to AT&T.

90. The fourth quarter of any year is the most vigorous and important marketing season for the wireless industry, and damage to competition during the fourth quarter is particularly harmful to the public's interest in fair competition.

91. Verizon's advertisements have caused injury to AT&T and unless enjoined will injure AT&T's goodwill and erode its market share. These advertisements also damage honest competition.

92. The Court should issue a temporary restraining order, preliminary injunction, and permanent injunction to stop Verizon's false advertisements and misleading coverage maps.

## COUNT I - FALSE ADVERTISING IN VIOLATION OF
## THE LANHAM ACT, 15 U.S.C. § 1125 (a)

93. AT&T repeats, re-alleges, and incorporates the allegations set forth in paragraphs 1-92 as if fully set forth herein.

94. Verizon is making false and misleading statements in direct mail, television, print, and Internet advertisements.

95. Verizon's false and misleading statements have actually deceived or have the capacity to deceive a substantial portion of the intended audience.

96. Verizon's false and misleading statements are material in that they are likely to influence purchasing decisions of wireless customers.

97. Verizon's false and misleading statements have caused injury to AT&T and unless enjoined will irreparably injure AT&T's goodwill and erode its market share, causing declining sales.

98. Verizon's representations in the direct mail, Internet, television, and print advertisements have traveled in interstate commerce.

99. Verizon's conduct constitutes false advertising in violation of the Lanham Act, § 43(a), 15 U.S.C. § 1125(a).

100. Based on Verizon's false and misleading advertisements, AT&T is entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

101. The balance of the harms supports issuance of a temporary restraining order, preliminary injunction, and permanent injunction.

102. Issuance of a temporary restraining order, preliminary injunction, and permanent injunction would promote the public interest.

103. AT&T has suffered and will continue to suffer irreparable harm as a result of Verizon's false and misleading advertising.

104. As described in 15 U.S.C. § 1117, AT&T is entitled to treble damages as a result of Verizon's violation of 15 U.S.C. § 1125(a).

105. This is an exceptional case as described in 15 U.S.C. § 1117 that entitles AT&T to reasonable attorneys' fees.

## COUNT II - FALSE ADVERTISING ACT IN VIOLATION
## OF GEORGIA FALSE ADVERTISING ACT

106.  AT&T repeats, re-alleges, and incorporates the allegations set forth in paragraphs 1-105 above as if fully set forth herein.

107.  Verizon's false and misleading advertising in direct mail, television, print and Internet advertisements violates the Georgia False Advertising Act, O.C.G.A. § 10-1-421, and AT&T is aggrieved thereby, pursuant to O.C.G.A. § 10-1-423.

108.  Based on Verizon's false and misleading advertising, AT&T is entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

109.  The balance of the harms supports issuance of a temporary restraining order, preliminary injunction, and permanent injunction.

110.  Issuance of a temporary restraining order, preliminary injunction and permanent injunction would promote the public interest.

111.  AT&T has suffered and will continue to suffer irreparable harm as a result of Verizon's false and misleading advertisements.

## COUNT III - GEORGIA DECEPTIVE TRADE PRACTICES

112.  AT&T repeats, re-alleges, and incorporates the allegations set forth in paragraphs 1-111 above as if fully set forth herein.

113.   Verizon has disparaged AT&T's wireless service by including false advertisements and misleading coverage maps in their television, print, direct mail and Internet advertisements.  Verizon is causing damage to AT&T.

114.   Verizon has violated and is violating of the provisions of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372, et seq.

115.   As a result of Verizon's deceptive trade practices, AT&T is entitled to a temporary restraining order, preliminary injunction, and permanent injunction.

116.   The balance of the harms supports issuance of a temporary restraining order, preliminary injunction, and permanent injunction.

117.   Issuance of a temporary restraining order, preliminary injunction, and permanent injunction would promote the public interest.

118.   AT&T has suffered and will continue to suffer irreparable harm as a result of Verizon's deceptive trade practices.

WHEREFORE, AT&T seeks relief as follows:

(1)   A temporary restraining order, preliminary injunction, and permanent injunction enjoining Verizon, and its officers, agents, servants, employees, attorneys, successors and assigns, and all others in active concert or participation, from displaying the: "Bench," "College," "Island of Misfit Toys," "Naughty or Nice," and "Blue Christmas" television advertisements;

(2)     A temporary restraining order, preliminary injunction, and permanent injunction enjoining Verizon, and its officers, agents, servants, employees, attorneys, successors and assigns, and all others in active concert or participation, from displaying a map of AT&T's coverage in which AT&T's non-"3G" coverage areas are depicted by "white" or "blank" space, or otherwise claiming that AT&T customers cannot communicate or use their wireless devices in large areas of the country;

(3)     Order Verizon to forthwith use its best efforts to identify and to recall from any third party any and all false or misleading marketing, advertising, and promotional materials used in connection therewith;

(4)     Order Verizon to issue a corrective advertisement or notice to all third parties that Verizon has solicited with false or misleading advertisements, making clear that Verizon's false or misleading statements were false or misleading;

(5)     Order Verizon to file with the Court and serve on AT&T's counsel, within 30 days after entry of the Court's restraining order, preliminary injunction or permanent injunction, a sworn statement as provided in 15 U.S.C. § 1116, setting forth in detail the manner and form in which Verizon has complied with the restraining order, preliminary injunction, or permanent injunction;

(6)     Order Verizon to provide an accounting of all sales and profits from its false and misleading advertisements;

(7)     Compensatory, lost profit, and any other damages available at law for AT&T's injury caused by Verizon's misconduct, pursuant to 15 U.S.C. § 1117;

(8)     Prejudgment and post-judgment interest on any monetary award to AT&T;

(9)     Treble damages under 15 U.S.C. § 1117;

(10)    A finding that this is an "exceptional" case under 15 U.S.C. § 1117, and an award of attorneys' fees and costs;

(11)    A trial by jury on all issues so triable; and

(12)    An award of such other and further relief as this Court deems just and proper.

This 11th day of November, 2009.

/s/ David L. Balser
David L. Balser
Georgia Bar No. 035835
Nathan L. Garroway
Georgia Bar No. 142194
Tracy Klingler
Georgia Bar No. 105450
McKenna Long & Aldridge LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
(404) 527-4000
(404) 527-4198 (facsimile)

Co-Counsel:

Neal S. Berinhout
Georgia Bar No. 054687
AT&T Mobility LLC
1025 Lenox Park Blvd., Suite C575
Atlanta, GA 30319
404-986-1427

*Attorneys for AT&T Mobility LLC*

## CERTIFICATE OF SERVICE

This is to certify that on November 11, 2009, I electronically filed the foregoing **FIRST AMENDED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, PERMANENT INJUNCTION, AND DAMAGES** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

> David L. Balser
> Nathan L. Garroway
> Tracy Klingler
> Harriet Jill Wasserman
> L. Joseph Loveland, Jr.

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

> Kenneth A. Plevan
> Lauren E. Aguiar
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York, NY  10036

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
(404) 527-4000
(404) 527-4198 (facsimile)

*/s/  David L. Balser*
David L. Balser
Georgia Bar No. 035835

*Attorney for AT&T Mobility LLC*