# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **AT&T MOBILITY LLC,** | |
| **Plaintiff,** | |
| **vs.** | **Civil Action No.** |
| | **1:09-cv-03057-TCB** |
| **CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,** | |
| **Defendant.** | |

### SUPPLEMENTAL MEMORANDUM OF LAW
### IN SUPPORT OF PLAINTIFF'S AMENDED MOTION
### FOR A TEMPORARY RESTRAINING ORDER

David L. Balser
Georgia Bar No. 035835
Nathan L. Garroway
Georgia Bar No. 142194
Tracy Klingler
Georgia Bar No. 105450

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
(404) 527-4000
(404) 527-4198 (facsimile)

*Attorneys for Plaintiff*
*AT&T Mobility LLC*

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I.   PRELIMINARY STATEMENT .................................................................1

II.  STATEMENT OF FACTS ....................................................................2

III. ARGUMENT AND AUTHORITY ..........................................................5

    A.   AT&T IS LIKELY TO SUCCEED ON THE MERITS ......................5

        1.   AT&T Is Likely to Satisfy The First And Second
            Elements of The Lanham Act Test Because Verizon's
            Ads Are Literally False .............................................................5

            a.   Verizon's False Advertisements .....................................8

                i.   The "Christmas Blues" Advertisement ................8

                ii.  The "Naughty or Nice" Advertisement...............10

                iii. The "Island of Misfit Toys" Advertisement. ......12

                iv.  Summary ............................................................14

        2.   Verizon's Claims Are Material ................................................15

    B.   AT&T IS SUFFERING IRREPARABLE HARM AND THE
        BALANCE OF EQUITIES STRONGLY FAVORS
        INJUNCTIVE RELIEF ..................................................................16

        1.   AT&T Is Suffering Irreparable Harm As A Result of
            Verizon's Actions .....................................................................16

        2.   A Temporary Restraining Order Would Cause No
            Cognizable Harm to Verizon ...................................................18

IV.  CONCLUSION .................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.,*
185 F.3d 606 (6th Cir. 1999) ...............................................................6

*Ardito v. City of Providence,*
263 F. Supp. 2d 358 (D.R.I. 2003) ....................................................18

*Bellsouth Telecomms., Inc. v. Hawk Commc'ns LLC,*
No. 04-280, 2004 WL 1085324 (N.D. Ga., Apr. 12, 2004) ...............6, 9, 11, 15

*BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC,*
425 F.3d 964 (11th Cir. 2005) ...........................................................17

*Cashmere & Camel Hair Mfrs. v. Saks Fifth Ave.,*
284 F.3d 302 (1st Cir. 2002)................................................................7

*Clorox v. Proctor & Gamble Commercial Co.,*
228 F.3d 24 (1st Cir. 2000)...........................................................6, 9, 11

*Cuisinarts v. Robot-Coupe, Int'l Corp.,*
No. 81-731, 1982 WL 121559 (S.D.N.Y. June 19, 1982).................6, 9, 11

*Ferrero v. Associated Materials, Inc.,*
923 F.2d 1441 (11th Cir. 1991) .........................................................17

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,*
299 F.3d 1242, 1247 .......................................................................6, 15

*McNeilab, Inc. v. American Home Prods. Corp.,*
848 F.2d 34 (2d Cir. 1988) ...............................................................16

*North Am. Med. Corp. v. Axiom Worldwide, Inc.,*
522 F.3d 1211 (11th Cir. 2008) .....................................................5, 6, 16

*Novartis Consumer Health v. Johnson & Johnson,*
   290 F.3d 578 (3d Cir. 2002) ...................................................................6

*Spiegel v. City of Houston,*
   636 F.2d 997 (5th Cir. 1981) .................................................................17

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
   497 F.3d 144 (2d Cir. 2007) ...................................................................7

*Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,*
   915 F. Supp. 360 (S.D. Fla. 1996) ........................................................15

STATUTES

The Lanham Act, Section 43(a), 15 U.S.C. § 1125(a) .........................5, 8

OTHER AUTHORITIES

Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and*
   *Procedure* § 2948.1 ..........................................................................17, 18

RULES

Georgia's False Advertising Law and Georgia's Uniform Deceptive Trade
   Practices Act ..........................................................................................5

# I.    PRELIMINARY STATEMENT

AT&T Mobility LLC ("AT&T") files this supplemental memorandum in support of its amended motion for temporary restraining order to address three new false television advertisements that Cellco Partnership d/b/a Verizon Wireless ("Verizon") started running on or about November 8, 2009, just five days after receiving notice of this action. In light of what has now been revealed to be a concerted campaign to deceive consumers, AT&T seeks a temporary restraining order to enjoin each of the false television advertisements Verizon is running.

The new advertisements are the most recent installments in Verizon's campaign to deceive consumers into believing that AT&T customers who are not in a "3G" coverage area cannot use their wireless devices. Like the "Bench" advertisement discussed in AT&T's Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order (Dkt. No. 3) (AT&T's "Original Brief"), the three advertisements discussed herein continue to convey the false message that AT&T customers who are not in an AT&T "3G" coverage area have <u>no</u> wireless coverage whatsoever, and therefore have no ability to use their wireless devices for any purpose, including browsing the Internet, downloading applications or even making voice calls, in vast areas of the country. Consistent with Verizon's initial

"out of touch" advertisements, the new advertisements prompting this supplemental brief are literally false.[1]

## II.    STATEMENT OF FACTS

On or about November 8, 2009 Verizon began running three new advertisements, all of which convey the false message that AT&T customers are unable to use their wireless devices outside of AT&T's "3G" coverage areas. (Wilson Supp. Decl. ¶ 6).

In the "Christmas Blues" advertisement, an AT&T customer is shown leaving a motel and trying to use his wireless device.  (Wilson Supp. Decl. ¶ 18). As he travels, he repeatedly shakes his wireless device, indicating that he has no service.  (Wilson Supp. Decl. ¶ 19).  When he finally arrives at a home, he is embraced by a child, and the camera pans to a red present with a red Verizon "3G" coverage map floating above it.  (Wilson Supp. Decl. ¶ 21).

---

[1]    Like the "Bench" advertisement discussed in AT&T's Original Brief, each of the new advertisements bolsters its false message by including a map depicting AT&T's "3G" coverage in blue and large swaths of "white" or "blank" space over the remaining portions of the United States.  AT&T incorporates by reference herein its argument in its Original Brief that the maps Verizon uses to depict AT&T's "3G" coverage are misleading in that they communicate that AT&T has no coverage in the "blank" or "white" spaces. A finding that the map included in Verizon's "Bench" advertisement is misleading is applicable to Verizon's use of the maps in its new advertisements as well.

The "Naughty or Nice" advertisement depicts a busy workshop of elves packing various electronic devices into red boxes while going through a roll call of "naughty" or "nice" recipients. (Wilson Supp. Decl. ¶¶ 12-13). The elves pack electronic devices into red boxes, while looking at a red map of Verizon's "3G" coverage, for "nice" recipients, but pack a blue box with what looks to be an Apple iPhone, and the lead elf warns "[g]ood luck browsing the web with that one" when the "Naughty" recipient's name is called. (Wilson Supp. Decl. ¶¶ 13 - 14, 16).

In the "Island of Misfit Toys" advertisement, outdated, discarded toys express surprise at the Apple iPhone's arrival on the island because they are of the belief that the iPhone can surf the web and download apps. This belief is immediately dispelled by the appearance of a "3G" coverage map showing large swaths of white space in which AT&T does not appear to have coverage. As the map appears, the iPhone shuts off and falls on its face and the discarded toys conclude: "You're going to fit right in here!" (Wilson Supp. Decl. ¶¶ 7 - 11).

The unambiguous false message in each of these advertisements is that AT&T customers are "out of touch" and cannot use their wireless devices in areas in which AT&T does not have "3G" coverage. This literally false message is bolstered by the misleading maps depicting AT&T's non-"3G" coverage areas as "white" or "blank" space.

Contrary to the message communicated by Verizon's advertisements, there are very few places where people live and work in the United States in which no wireless data coverage is available for AT&T's customers. (Wilson Supp. Decl. ¶¶ 3 - 5). AT&T (with network partners) provides wireless service via three different but complementary networks: a "2.0G" GSM/GPRS network, a "2.5G" GSM/EDGE network, and a "3G" network. (Wilson Supp. Decl. ¶ 3). The three networks combine to provide wireless data service to 303 million people where they live and work, or approximately 97% of people in the United States. (Wilson Supp. Decl. ¶ 3).

Approximately 301 million people, or over 96% of the U.S. population, have access to AT&T's "2.5G" GSM/EDGE service, on which consumers can do everything they can do on AT&T's "3G" network, including make calls, browse the Internet, including social networking sites, stream audio and video, or send electronic mail and text messages, albeit at slower speeds for some data applications. (Wilson Supp. Decl. ¶ 4). 233 million people, or 75% of the U.S. population, live and work in areas in which AT&T has "3G" coverage. (Wilson Supp. Decl. ¶ 5).

By depicting AT&T customers as unable to use their wireless devices or by indicating that devices on AT&T's network will not function in areas where AT&T

does not have "3G" coverage, Verizon falsely communicates that AT&T's customers cannot use their wireless devices in areas where they are, in fact, able to do so. (Wilson Supp. Decl. ¶ 23).

## III. ARGUMENT AND AUTHORITY

### A. AT&T IS LIKELY TO SUCCEED ON THE MERITS[2]

#### 1. AT&T Is Likely to Satisfy The First And Second Elements of The Lanham Act Test Because Verizon's Ads Are Literally False.

As the Court is aware, to succeed on a claim for false advertising a plaintiff must show that: (1) the advertisements at issue are false or misleading; (2) the advertisements deceive, or have the capacity to deceive consumers; (3) the deception has a material effect on purchasing decisions; (4) the misrepresented product or service is sold in interstate commerce; and (5) the plaintiff has been - or is likely to be - injured as a result of the false advertising. *North Am. Med. Corp. v.*

---

[2] AT&T incorporates by reference herein the discussion of the following issues in its Original Brief: (a) the standard for entering a temporary restraining order; (b) section 43(a) of the Lanham Act; (c) the effect of Verizon's false claims on interstate commerce; (d) the continuing harm suffered by AT&T; (e) AT&T's burden under the Georgia's False Advertising Law and Georgia's Uniform Deceptive Trade Practices Act; and (f) the public's interest in fair and truthful advertising. The discussion of these issues is equally applicable to the three new, literally false, advertisements discussed herein. This brief is meant to cover only the issues applicable to the new advertisements that differ from those raised in AT&T's Original Brief.

*Axiom Worldwide, Inc.*, 522 F.3d 1211, 1224 (11th Cir. 2008) (quoting *Johnson &*
*Johnson Vision Care, Inc.*, 299 F.3d 1242, 1247).

Where a challenged advertisement is literally false, a plaintiff need not show
evidence of consumer deception. *Johnson & Johnson Vision Care, Inc.*, 299 F.3d
at 1247 (citing *Am. Council of Certified Podiatric Physicians & Surgeons v. Am.*
*Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 614 (6th Cir. 1999)).

A "literally false" message may be either explicit or "conveyed by necessary
implication when, considering the advertisement in its entirety, the audience would
recognize the claim as readily as if it had been explicitly stated." *Novartis*
*Consumer Health v. Johnson & Johnson,* 290 F.3d 578, 587 (3d Cir. 2002) (citing
*Clorox v. Proctor & Gamble Commercial Co.,* 228 F.3d 24, 34 (1st Cir. 2000));
*see also Cuisinarts v. Robot-Coupe, Int'l Corp.*, No. 81-731, 1982 WL 121559, at
*1 (S.D.N.Y. June 19, 1982) (holding that an advertisement need not assert a
message "in *haec verba*" where the language and visual content of the
advertisement is the "practical, grammatical, syntactical equivalent" of the
message conveyed); *Bellsouth Telecomms., Inc. v. Hawk Commc'ns LLC,* No. 04-
280, 2004 WL 1085324, at * 12 (N.D. Ga., Apr. 12, 2004) (finding an
advertisement depicting the defendant, a dial-up Internet service provider, winning
a race against the plaintiff, a DSL Internet service provider, and including the tag

line "experience DSL speed with Joi Express," literally false by necessary implication).

An example of a Court's viewing a television advertisement in context and concluding that the ad was literally false by necessary implication is *Time Warner Cable, Inc. v. DIRECTV, Inc.* In that case the Second Circuit held that an advertisement including the phrase "settling for cable would be illogical", when viewed in the context of the advertisement's subsequent praise for the "amazing picture quality of DIRECTV HDTV" and reference to an "HD picture that can't be beat", necessarily implied the false message that the plaintiff cable provider's transmission of HDTV was inferior to that of the defendant, DIRECTV. *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 158 (2d Cir. 2007).

When an advertisement conveys a literally false message, either expressly or by necessary implication, as Verizon's ads here do, courts presume that consumers have been deceived. *Cashmere & Camel Hair Mfrs. v. Saks Fifth Ave.*, 284 F.3d 302, 314 (1st Cir. 2002) ("Common sense and practical experience tell us that we can presume, without reservation, that consumers have been deceived when a defendant has explicitly misrepresented a fact that relates to an inherent quality or characteristic of the article sold. To presume as much requires neither a leap of faith nor the creation of any new legal principle.")

Therefore, the first and second elements of AT&T's Lanham Act claim are satisfied by a showing that Verizon's ads are literally false – either expressly false or literally false by necessary implication – without needing to introduce evidence of consumer deception.

### a. Verizon's False Advertisements.

Consistent with the "out of touch" theme of the original advertisement with which Verizon launched its current advertising campaign against AT&T, the overriding message communicated by each of the new advertisements that Verizon started running on or about November 8, 2009 is that an AT&T customer's wireless device does not work at all when outside of a "3G" coverage area. This message is literally false.

### i. The "Christmas Blues" Advertisement.

Verizon's "Christmas Blues" advertisement starts with a man leaving a motel, in the snow, while the song "Blue Christmas" plays in the background. (Wilson Supp. Decl. ¶ 18). The man appears to be trying to use a wireless device while walking away from the motel and expresses frustration with the device. (Wilson Supp. Decl. ¶ 18). He repeatedly shakes his wireless device as if it is not working, and while this image is being displayed, a map depicting AT&T's

coverage appears above him depicting large swaths of "white" or "blank" space across the United States. (Wilson Supp. Decl. ¶ 19).

Next, the man is shown in a nondescript train station, and then in the back of a taxi, looking frustrated and continuing to shake his wireless device. (Wilson Supp. Decl. ¶ 20). In all, the ad shows the man shaking his phone on three separate occasions – reinforcing that an AT&T customer cannot use his phone at all when outside AT&T's depicted coverage area. (Wilson Supp. Decl. ¶ 23). Accordingly, viewing the advertisement in its entirety, one could come to no conclusion other than that an AT&T customer cannot use his or her wireless device to browse the Internet in areas outside of AT&T's depicted coverage area. *See Clorox,* 288 F.3d at 34; *see also Cuisinarts,* 1982 WL 121559 at *1; *Bellsouth Telecomms, Inc.,* 2004 WL 1085325 at *12.

This message is patently false. As described in AT&T's Original Brief, AT&T covers the United States with a ubiquitous wireless network called "2.5G" GSM/EDGE and a "2.0G" GSM/GPRS network. When customers are not on AT&T's "3G" network or not in a "3G" area, they are typically communicating on AT&T's "2.5G" GSM/EDGE network. On this network, they can fully use their wireless devices outside of a "3G" coverage area, and they undisputedly have

coverage in areas depicted by the "white" or "blank" spaces on the maps used in Verizon's advertisements. (*See* Wilson Decl. at ¶¶ 5 - 10).

### ii. The "Naughty or Nice" Advertisement.

The same is true for the message conveyed in Verizon's "Naughty or Nice" advertisement in which a workshop of elves packing various electronic devices into boxes on a conveyor belt engages in a "Naughty" or "Nice" roll call. (Wilson Supp. Decl. ¶¶ 12 - 13). As the "Nice" names are called, a map depicting Verizon's purported "3G" coverage in red follows a red box as it travels down the conveyor belt and is loaded with a gift. (Wilson Supp. Decl. ¶¶ 12 - 13).

When a "Naughty" name is called, the elf doing the packing retrieves an electronic device clearly designed to represent the Apple iPhone and a blue coverage map purporting to show AT&T's coverage with large swaths of "white" or "blank" space across the United States appears above him. (Wilson Supp. Decl. ¶ 14). When the map appears, production at the workshop halts, the lights go out, and the background music stops. (Wilson Supp. Decl. ¶ 15). Looking up at the map, the elf doing the packing states, "Naughty," and places the device in a blue box. (Wilson Supp. Decl. ¶ 15). As production resumes, the elf with the checklist warns, "[g]ood luck browsing the web with that one" and the advertisement ends

with the tag line "With five times more 3G coverage than AT&T. . .". (Wilson Supp. Decl. ¶ 16 - 17).

The unambiguous message communicated by this advertisement is that AT&T customers are unable to browse the Internet when they are outside of the depicted AT&T's coverage area. Specifically, the statement "[g]ood luck browsing the web with that one," coupled with the image of the misleading map, the "Naughty" label associated with the iPhone, the blue box, and the power failure when each of these appear on the screen, conveys the unambiguous message that AT&T's customers cannot use their wireless devices to browse the Internet when outside of the depicted coverage area. *See Clorox v. Procter & Gamble Commercial Co.,* 288 F.3d at 34; *see also, Cuisinarts v. Robot-Coup, Int'l Corp.,* 1982 WL 121559 at *1; *see also, Bellsouth Telecommunications, Inc. v. Hawk Communications LLC,* 2004 WL 1085325 at *12.

This message is patently false because AT&T covers the United States with a ubiquitous "2.5G" GSM/EDGE wireless data service. When customers are not on AT&T's "3G" network or not in a "3G" area, they are typically communicating on AT&T's "2.5G" GSM/EDGE network. On this network, they can fully use their wireless devices, including browsing the Internet, when outside of a "3G" coverage area, and they undisputedly have coverage in areas depicted by the

"white" or "blank" spaces on the maps used in Verizon's advertisements. (*See* Wilson Decl. at ¶¶ 5 - 10).

### iii.    The "Island of Misfit Toys" Advertisement.

The "Island of Misfit Toys" advertisement begins with a group of outdated, discarded toys expressing surprise at the arrival of an Apple iPhone while a voice over sings "We're on the Island of Misfit Toys." (Wilson Supp. Decl. ¶¶ 7 - 8).

Next, one of the toys asks the iPhone "What are you doing here? You can download apps and browse the web!" Another toy exclaims, "Yeah. People will love you!" (Wilson Supp. Decl. ¶¶ 8 - 9). Seemingly in response to these statements, a blue AT&T coverage map depicting large swaths of "white" or "blank" space across the United States appears above the iPhone, and all of the toys exclaim "Oh!" in dismay, while the iPhone wilts and its screen turns dark. (Wilson Supp. Decl. ¶ 10). A toy then assures the iPhone "[y]ou're going to fit right in here!" and the announcer concludes with the tag line, "With over five times more 3G coverage than AT&T, Verizon Wireless is your destination for great gifts." (Wilson Supp. Decl. ¶¶ 10 - 11).

Considering this advertisement in its entirety, Verizon's unambiguous message is that AT&T's iPhone users have no connectivity to download apps and browse the Internet outside of the depicted AT&T coverage area. By juxtaposing

the map depicting AT&T "3G" coverage with the image of the wilted and dark iPhone on an island of outdated toys who appear to understand the alleged shortcomings, the advertisement falsely claims that consumers cannot use their iPhones or other wireless devices to browse the Internet or download applications when outside AT&T's depicted coverage area. This message is as clear as if Verizon had included a voice over or text stating: "You cannot browse the Internet or download apps when you are outside the '3G' coverage area."

This message is patently false because AT&T covers the United States with a ubiquitous wireless network called "2.5G" GSM/EDGE and a "2.0G" GSM/GPRS network. When customers are not on AT&T's "3G" network or not in a "3G" area, they are typically communicating on AT&T's "2.5G" GSM/EDGE network. On this network, they can fully use their wireless devices outside of a "3G" coverage area, including browsing the Internet or downloading apps, and they undisputedly have coverage in areas depicted by the "white" or "blank" spaces on the maps used in Verizon's advertisements. (*See* Wilson Decl. at ¶¶ 5 - 10).[3]

---

[3] Like the three new false advertisements discussed herein, Verizon's "Bench" and "College" advertisements are also literally false. In each of those advertisements Verizon depicts AT&T customers as frustrated and unable to use their wireless devices. In "Bench," an AT&T customer sits alone on a bench

*(footnote continued on next page)*

### *iv. Summary.*

The claims in Verizon's advertisements described above are literally false because the combination of the visual images and audio conveys the express message that the phone will not work outside of a "3G" coverage area. At a minimum, even if the Court concludes that the claims are not expressly false, which AT&T contends they are, Verizon's claims are literally false by necessary implication because even though Verizon does not state that AT&T's customers' phones will not work outside of a "3G" coverage area, consumers who see what is happening on the screen – the man shaking the phone, the iPhone being put in the "naughty" box coupled with the admonition "good luck browsing the web with that one," and the iPhone, on the Island of Misfits, wilting and turning off – could not conclude anything else.

---

unable to use her phone. In "College," the AT&T customer shakes his head to communicate his phone is not working. Consistent with Verizon's new false advertisements, a map depicting AT&T's "3G" coverage appears in each of the advertisements just as the AT&T customers are allegedly unable to use their wireless devices. Considering these advertisements in their entirety, Verizon conveys the false message that AT&T's customers cannot use their wireless devices when they are outside of the depicted coverage area. For this reason, the Court should enjoin Verizon from displaying the "Bench" and "College" advertisements as well as the advertisements discussed herein.

## 2. Verizon's Claims Are Material.

In cases where the message at issue is literally false, or literally false by necessary implication, a plaintiff may satisfy the materiality requirement of a false advertising claim "by proving that the defendants misrepresented an inherent quality or characteristic of the product." *Johnson & Johnson Vision Care*, 299 F.3d at 1250. As set forth in AT&T's original brief, AT&T's product is the delivery of wireless voice and data service to its customers. A misleading claim about the availability of the service, or AT&T's ability to provide the service goes to the very heart of AT&T's business. A product's availability has been held to go directly to one of that product's "characteristics". *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.,* 915 F. Supp. 360, 368 (S.D. Fla. 1996).

Because coverage – *i.e.*, where AT&T has wireless voice and data networks available to provide service – is an inherent quality or characteristic of AT&T's business, Verizon's false advertisements are likely to influence consumers' purchasing decisions. *See BellSouth Telecomms., Inc.*, 2004 WL 1085324 at *13 (finding a defendant's "DSL speed" claim has "a material effect on consumers' purchasing decisions" because "speed is an inherent quality or characteristic of Internet service. . . "). As a result, Verizon's false advertisements unfairly influence consumers to choose Verizon or leave AT&T because, according to the

advertisements, AT&T customers have no coverage and thus cannot use their wireless devices whatsoever when they are outside of AT&T's depicted coverage area.

## B. AT&T IS SUFFERING IRREPARABLE HARM AND THE BALANCE OF EQUITIES STRONGLY FAVORS INJUNCTIVE RELIEF.

### 1. AT&T Is Suffering Irreparable Harm As A Result of Verizon's Actions.

Verizon has, again, stepped outside the boundaries of legitimate and fair competition and made literally false claims about AT&T's ability to provide a wireless service to its customers. Given the potentially devastating nature of literally false claims, the courts consistently hold that where a competitor's comparative representations are false, irreparable harm is presumed. *See McNeilab, Inc. v. American Home Prods. Corp.*, 848 F.2d 34, 38 (2d Cir. 1988) (when an advertisement makes a false comparison to a competing product, the value of the competing product is necessarily diminished in the mind of the consumer and irreparable injury may be presumed.); *see also N. Am. Med.*, 522 F.3d at 1227.

As AT&T has shown, Verizon's claims are false. As such they deprive AT&T of any competitive advantage it legitimately has and reduce consumers' incentive to choose AT&T. Given the intense and direct competition between the

parties, the Court may presume that AT&T has and will continue to be irreparably harmed by Verizon's advertisements.

As a result of Verizon's false claims, the enormous goodwill AT&T has built up among its wireless network consumers, by investing billions to ensure its networks work, is being eroded. (Wilson. Decl. ¶ 28) That loss of goodwill is impossible to calculate with precision. (Wilson Supp. Decl. ¶¶ 24 -25).

This Court can do nothing at the end of this case to rectify those losses. It cannot return the goodwill that AT&T is losing every week, nor can it force customers who have left AT&T, or chosen Verizon over AT&T as a result of Verizon's false advertising, to change their mind. For this reason, these losses constitute irreparable harm. *See, e.g., BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 970 (11th Cir. 2005) (loss of customers and goodwill constitutes irreparable harm); *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (affirming district court's preliminary injunction because plaintiff would otherwise "lose its long-time customers," and because "the loss of customers and goodwill is an 'irreparable' injury'") (citing *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981)); 11A Charles Wright, Arthur Miller & Edward Cooper, *Federal Practice and*

*Procedure* § 2948.1 ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable") (collecting cases).

### 2. A Temporary Restraining Order Would Cause No Cognizable Harm to Verizon

Any loss Verizon suffers in having to stop running its literally false advertisements is a consequence of its own wrongdoing. In these circumstances, any conceivable harm that Verizon might identify as stemming from a temporary restraining order is not cognizable. *See Ardito v. City of Providence*, 263 F. Supp. 2d 358, 373 (D.R.I. 2003) (noting that any burdens that an injunction imposed on defendant "would result from a situation of the [defendant]'s own making," and defendant therefore "cannot cite the possible consequences of that decision as a hardship that weighs against granting a preliminary injunction").

## IV. CONCLUSION

For the foregoing reasons, the Court should grant AT&T's amended motion for a temporary restraining order and enjoin Verizon from (1) displaying the "Bench," "College," "Island of Misfit Toys," "Naughty or Nice," and "Christmas Blues" television advertisements or otherwise claiming that AT&T customers cannot communicate or use their wireless devices when they are outside of a "3G" coverage area, and (2) displaying a map of AT&T's coverage in which AT&T's non-"3G" coverage areas are depicted by "white" or "blank" space.

Respectfully submitted, this 12th day of November, 2009.

/s/ David L. Balser
_____
David L. Balser
Georgia Bar No. 035835
Nathan L. Garroway
Georgia Bar No. 142194
Tracy Klingler
Georgia Bar No. 105450

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
(404) 527-4000
(404) 527-4198 (facsimile)

Neal S. Berinhout
Georgia Bar No. 054687
AT&T Mobility LLC
1025 Lenox Park Blvd.
Suite C575
Atlanta, Georgia  30319

*Attorneys for AT&T Mobility LLC*

## CERTIFICATE UNDER LOCAL RULE 7.1(D)

Pursuant to Local Rule 7.1(D), I certify that the foregoing pleading is a computer-generated document, prepared in Times New Roman, 14-point font, in accordance with Local Rule 5.1(B).

*/s/ David L. Balser*
David L. Balser
Georgia Bar No. 035835

## CERTIFICATE OF SERVICE

This is to certify that on November 12, 2009, I electronically filed the foregoing **SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR A TEMPORARY RESTRAINING ORDER** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

> David L. Balser
> Nathan L. Garroway
> Tracy Klingler
> Harriet Jill Wasserman
> L. Joseph Loveland, Jr.

I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

> Kenneth A. Plevan
> Lauren E. Aguiar
> Skadden, Arps, Slate, Meagher & Flom LLP
> Four Times Square
> New York, NY 10036

McKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308
(404) 527-4000
(404) 527-4198 (facsimile)

/s/ *David L. Balser*
David L. Balser
Georgia Bar No. 035835

*Attorney for AT&T Mobility LLC*