## SUPPLEMENTARY DECLARATION OF JOEL B. COHEN

JOEL COHEN states as follows:

1. My name is Joel Cohen. I am over eighteen years of age and am competent to testify as to the statements made in this declaration. Unless indicated otherwise, I have personal knowledge of the facts stated below, and if sworn as a witness I would testify to those facts.

2. My original declaration dated November 12 provides a detailed analysis of a consumer study that AT&T presented to examine possibly misleading implications of a commercial that Verizon Wireless had been running. It also summarized my credentials.

3. My curriculum vitae is attached to my original declaration.

4. On November 11, 2009, I was contacted by counsel for Verizon Wireless and asked to review certain documents and information in connection with the above-captioned case, particularly the First Amended Complaint, Supplemental Memorandum of Law, and the Verizon Wireless commercials that are the subject of that amended complaint.

5. The amended complaint repeatedly refers to these Verizon Wireless advertisements as falsely communicating that AT&T does not have wireless data coverage throughout much of the United States. The amended complaint alleges that these advertisements are either "literally false" because of explicit false claims, or false under a "necessary implication" standard ("conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated." Page 6 of Supplementary Memorandum of Law). The legal interpretation of the "necessary implication" standard is beyond the scope of my declaration, and I am not intending to address such issues of law.

6. Any such standard, however, touches on an important area of consumer information processing and a substantial literature on inference processes. As my curriculum vitae shows, I have published extensively about how consumers process information and arrive at beliefs and attitudes, many of which are based on inferences. A recent paper of mine about this topic recently received the best paper award from the *Journal of Consumer Research*, the highest rated journal in my field. In the context of psychological research on inference making, for an inference to be "necessary" implies being able to predict a very high uniformity of response because the words used could hardly mean something different. Such inferences have been described as "facially evident" in that most people behaving in a reasonable fashion would make the same inference. I will examine the new commercials to help determine whether, absent any evidence from consumers, it is reasonable to conclude that the message AT&T asserts has been communicated has in fact been communicated by "necessary implication." In essence, AT&T asserts that consumers will receive the message that there is no cellphone service whatsoever in map areas that appear in white (or are blank) when depicting AT&T service.

7. In its amended complaint AT&T clearly acknowledges a difference in quality between a "3G" network and both a "2.0G" and "2.5G" network and that the former is an "upgrade." In my original declaration I discussed the fact that these commercials are clearly intended for consumers who value the higher transmission speed of a "3G" network (e.g., desiring increased bandwidth for uploading and downloading data and video faster). These consumers are quite likely to understand that a commercial specifying "3G" service in its comparisons to AT&T is not comparing overall coverage regardless of speed. Nothing in the amended complaint appears to allege that Verizon Wireless' use of "3G" to designate a

recognized level of higher transmission speed is false or that Verizon Wireless falsely depicts its own "3G" coverage, either by statement or on its maps.

8. The gist of AT&T's falsity claim based upon "necessary implication" is that Verizon Wireless communicated (and led people to infer) that AT&T does not have wireless data coverage throughout much of the United States. With that claim in mind I address the commercials that Verizon Wireless introduced on or around November 8 and which are referred to in the amended complaint starting with paragraph 63.

9. The "Island of Misfit Toys" commercial is correctly referred to in the amended complaint as a "parody." The narrative is quite straightforward: the other toys express admiration for the phone but, after seeing the more limited AT&T "3G" coverage, understand why this shortcoming places it on the island with the other toys. The commercial then focuses on a side-by-side comparison of "3G" coverage by Verizon Wireless and AT&T.

10. As a parody, the use of "misfit" toys is a narrative device (sometimes equated with hyperbole) and is not to be taken literally (e.g., non-"3G" phones are just "toys."). Much of modern advertising uses narrative devices of this type to attract attention, create humor, and make advertising more memorable.

11. There is no ambiguity in the two maps' presentation of the coverage information. Both maps use the prominent language "5X More 3G Coverage," and there is no explicit reference to any other type of coverage. Using color (red for Verizon Wireless and blue for AT&T) to represent the clearly stated "3G"coverage and white/ blank space to represent a lack of "3G"coverage could hardly be clearer.

12. AT&T's "necessary implication" basis for claiming this commercial is false relies on their interpretation of the narrative. This is summarized on page 12 of their Supplementary Memorandum: "Considering this advertisement in its entirety, Verizon's unambiguous message is that AT&T's iPhone users have no connectivity to download apps and browse the internet outside of the depicted AT&T coverage area." I have been studying consumer information processing of advertising and other messages for over 40 years and am one of the most prolific authors of scholarly papers on this topic in my field. Based on that extensive background and a careful review of this commercial, I do not agree that the commercial communicates the message AT&T alleges. Furthermore, I can say without equivocation that AT&T's assertion that the commercial communicates such an ambiguous message to consumers lacks foundation. Such an interpretation of the message consumers will receive is hardly a "necessary implication" of the commercial.

13. When there is no basis for asserting that consumers will necessarily take away a particular meaning (i.e., as a "necessary implication") it is well established that a properly designed and executed consumer study is needed. The perspective I adopt (given my years of study and research) is that, in the absence of convincing evidence to the contrary, it is more reasonable to assume that consumers do not engage in complex reasoning processes when they are exposed to advertising. Unless consumers have some incentive to interpret a message in a particular way (e.g., to defend a prior decision or support their preferred view of the world; often referred to as "motivated reasoning"), they typically take away a message that is very close to what the commercial actually said. In my opinion, the message is that "3G" service is available over a wider area through Verizon Wireless compared to AT&T.

14. AT&T alleges that the message in the "Christmas Blues" advertisement is "patently false" (page 9 of AT&T's Supplementary Memorandum). Based on their depiction of the dramatization on page 9, AT&T makes the following "leap" in logic: that a "man shaking his phone on three separate occasions" reinforces the idea "that an AT&T customer cannot use his phone at all when outside AT&T's depicted coverage area." AT&T argues that, "Accordingly, viewing the advertisement in its entirety, one could come to no conclusion other than that an AT&T customer cannot use his or her wireless device to browse the Internet in areas outside of AT&T's depicted coverage area" (page 9).

15. The "patently false" claim does not appear to correspond to "expressly false" but to some interpretation of "false by necessary implication." But that is a very strong assertion, proceeding as it does from a universal symbol of displeasure (shaking one's head from side to side). People in the same circumstances as the person portrayed in this commercial could be displeased by a number of things, including slower than expected service. Displeasure would be a reasonable reaction from a person who purchased a "3G" system and whose expectations were not met because of AT&T's failure to provide "3G" service in the person's location. So it is not correct to say that someone exposed to this commercial "could come to no conclusion other than" the interpretation/inference assumed by AT&T.

16. Hence, the "necessary implication" standard cannot be met for this commercial. Whether there is any basis in fact for a claim that this commercial might communicate a misleading message cannot be reliably determined in the absence of a properly designed and executed consumer study.

17. Applying my background and expertise to this commercial in a similar fashion as I did for the "Island of Misfit Toys" commercial, I note that the audio part of the commercial

begins with a straightforward question: "Want 3G browsing in more places?" That provides the context for displaying clearly identified maps of Verizon Wireless and AT&T's respective "3G" coverage. There is nothing presented in this commercial to remotely suggest that any other type of coverage is being depicted, so I would not anticipate any inference to that effect. What inferences or conclusions, if any, people might form about such things as how displeased they should be when "3G" service is not available are an individual matter. Given my analysis, I fail to see a reasonable basis for asserting that this commercial is misleading, and there is no empirical evidence (e.g., from a consumer study) that consumers are being misled.

18. I have been advised that the third commercial ("Naughty and Nice") discussed in AT&T's amended complaint is being revised. I have not seen a copy of this revised commercial and, therefore, have no comments to make about it.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Gainesville, Florida on November 15, 2009.

_____
Joel B. Cohen