# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

AT&T MOBILITY LLC,

        Plaintiff,

vs.

CELLCO PARTNERSHIP d/b/a
VERIZON WIRELESS

        Defendant.

Civil Action File No.
1:09-CV-3057-TCB

## DECLARATION OF JEROME KARNICK

I, Jerome Karnick, under penalty of perjury, declare as follows:

## PERSONAL BACKGROUND

1. I am Associate General Counsel (Marketing & Consumer Law) at Verizon Wireless ("Verizon"). I have been employed by Verizon since 1998 and have held my current position since 2008.

2. At Verizon, I am responsible for ensuring that Verizon's advertising campaigns comply with all laws and regulations, and I oversee legal disputes

arising from advertising campaigns for Verizon's products and services and those of Verizon's competitors.

## CONDUCT OF AT&T IN RESPONSE TO THE VERIZON CAMPAIGN

3. As part of its "There's a Map for That" advertising campaign, Verizon began running the "College" (Exhibit 20) television commercial on October 5, 2009 and the "Bench" (Exhibit 21) television commercial on October 7, 2009.

4. At the time the advertisements began running, to my knowledge AT&T did not make available to the public a nationwide map that identified the extent of its 3G service.

5. AT&T, through its in-house counsel Kerwin Gray, conveyed certain complaints regarding those ads to me on October 7, 2009. (Exhibit 22.)

6. In response to Mr. Gray's October 7, 2009 email, despite our disagreement with his assertions, I assured him that Verizon would modify the advertisements to address AT&T's concerns: "[D]espite the fact that Verizon Wireless is confident that its current ads are neither false nor misleading, we will modify them to address your concern that they might imply that AT&T does not provide any service outside of its 3G coverage area. Revised ads should be on TV and radio by the middle of next week." (Exhibit 23.)

2

7. As promised, Verizon promptly modified the advertisements, tailoring them to make clear that they only address AT&T's 3G service. With respect to "Bench", the line "And if you want to know why your friend's 3G network keeps her out of touch, there's a map for that, too" was replaced with "And if you want to know why your friend's 3G coverage is so spotty, there's a map for that, too." (Compare Exhibit 21 with Exhibit 15.)

8. The modified advertisements began running on October 12, 2009. I supplied Mr. Gray with courtesy copies of the modified advertisements on October 15, 2009. (Exhibit 24.)

9. While I remained in contact with Mr. Gray during October and into November (the purpose of which was to voice Verizon's concern with AT&T's Bill Curtis campaign, which we believe renders a false impression that AT&T offers 3G service nationwide) (Exhibit 24), Mr. Gray did not express any objections to Verizon's modified advertisements.

10. In fact, the modified advertisements ran continuously, without *any* further complaint from AT&T until its November 3, 2009 application for a Temporary Restraining Order.

11. Verizon's 3G comparisons were publicly available long before the television ads began to run in early October. Since at least July 24, 2008, AT&T

3

has been aware of Verizon's dissemination of maps comparing the 3G coverage offered by Verizon and AT&T. (Exhibit 25.) AT&T has further been aware, since at least November 2008, that Verizon continuously has displayed 3G comparative maps on its website. (Exhibit 26.) AT&T did not demand that Verizon cease running this type of comparative campaign nor did AT&T request modifications to show non-3G coverage. (AT&T only stated that Verizon was using outdated information about AT&T's 3G coverage areas -- an assertion we believed to be unfounded, because Verizon (i) based these maps on the most recently available information provided by the independent wireless monitoring company American Roamer, and (ii) directed viewers of the advertisement to AT&T's website in the event more current information became available).

12. I respectfully submit that AT&T's failure to bring any action in response to this comparison advertising by Verizon for over a year belies AT&T's purported need for a Temporary Restraining Order.

13. It is my understanding that AT&T asserts that an AT&T subscriber can do everything on AT&T's 2.5G network that he or she could do on AT&T's 3G network. (Pl.'s Supp. Br. 4.) AT&T's own website (www.wireless.att.com), however, makes it clear that 3G coverage is necessary in order for AT&T

customers to avail themselves of simultaneous voice and data coverage. (Exhibit 27.)

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   November 16, 2009
         Elgin, Illinois

                                    Respectfully submitted,

                                    _____
                                    Jerome Karnick